HONEYWELL, INC., Respondent, v CITY OF NEW YORK, Appellant.

First Department, April 30, 1985

### APPEARANCES OF COUNSEL

*John F. Grubin* of counsel (*June A. Witterschein, Emily Pines* and *Marvin R. Kwartler* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Julius L. Schapira* of counsel (*Morris Dershowitz* and *John E. Osborn* with him on the brief; *Max E. Greenberg, Cantor & Reiss,* attorneys), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

After public bidding in April 1973, plaintiff Honeywell, Inc., the lowest bidder, was awarded a contract to install and maintain a system of instrumentation and data logging equipment at the Rockaway, Jamaica, Bowery Bay and Tallman's Island sewage treatment plants. The information logged at these four plants was to be transmitted to a central computer to be housed at a fifth location on Ward's Island. The contract, executed on August 1, 1973, called for a total payment to Honeywell of $1,600,000. This project was part of the city's larger over-all design to upgrade its sewage treatment and disposal facilities

involving 16 different construction contracts at a total cost of over $150,000,000.

As originally envisioned, Honeywell's performance was to span a 5½ year period, 3½ years of which were to be devoted to engineering and construction and 2 years to maintenance. Maintenance procedures were to begin following substantial completion of each of the four plants. The scheduled final completion for the entire project was February 1979.

In January 1981, Honeywell commenced an action alleging that the city breached the contract by: (1) refusing to allow it to utilize Honeywell manufactured equipment on the project rather than that required by the specifications; (2) failing to properly schedule and coordinate the work of various contractors, as well as preventing Honeywell from obtaining full access to work areas on the various sites; and (3) failing to provide the necessary design conduit and wiring required to operate the Honeywell equipment. As a result plaintiff claims that completion at two of the sites was delayed for two years and completion of two other sites rendered impractical. Additionally, the Tallman's Island site could not be made operational because of alleged defective electrical and mechanical installation. Plaintiff, proceeding on a quantum meruit theory, sought recovery of $1,342,671. This figure represented a total claim of $2,687,004 as the reasonable value of the work performed pursuant to the contract less a payment by the city of $1,344,333. After trial, the jury found that Honeywell was entitled to a total quantum meruit recovery of $2,570,178 before deducting the city's payment. The city now appeals from the final judgment awarded against it of $1,225,845 plus interest.

After reviewing the lengthy trial record, we are of the opinion that plaintiff has failed to establish its right to any recovery whatsoever. We agree with the city's contention that, although the complaint is couched in terms of breach of contract and abandonment, it is in actuality a claim for damages due to delay. In article 13 of its agreement with the city, Honeywell agreed "to make no claim for damages for delay in the performance of [the] contract occasioned by any act or omission to act of the City or any of its representatives." Any such claim was to be fully compensated by an extension of time in which to complete the required work. Other articles of the agreement provided for notification by Honeywell to the city of any condition causing delay or requiring extra work as a prerequisite for extra work compensation. The Court of Appeals in *Kalisch-Jarcho, Inc. v City of New York* (58 NY2d 377) has determined that such "no-damage-for-delay" clauses are enforceable where the conduct

resulting in the delay complained of was not intentional and malicious or the result of gross negligence on the city's part. The voluminous record before us reveals a total lack of any evidence that the city acted with any malicious intent or in a grossly negligent manner. Accordingly, the judgment should be reversed and the complaint dismissed.

Honeywell contends that it was prevented from performing its part of the contract by the failure of the city to provide wiring compatible with its instrumentation and to coordinate the installation by electrical contractors of required plant wiring. Separate electrical contractors for each site were required by General Municipal Law § 101. While the installation of the wiring was delayed to such an extent that Honeywell threatened to bring suit, it was not the responsibility of the city to see that the electrical contractors performed in a timely fashion. In fact, the contract obligated Honeywell to supervise the wiring of its equipment at each plant, and the record indicates that the city issued change orders and other directives whenever necessary to facilitate wiring. As to Honeywell's more general claim as to the city's alleged failure to coordinate the work of the various contractors on the construction sites, the evidence is clear that the agreement between the parties required consultation among contractors, which requirement Honeywell itself ignored. Each of the construction sites had a consultant engineer to gather information from all of the contractors and coordinate efforts. To this end monthly progress and coordination meetings, at which Honeywell's attendance was required, were held at each site. Honeywell failed to attend a significant number of these meetings due to insufficient personnel. Indeed, all of Honeywell's construction efforts were hampered by a lack of personnel. As early as March 1974, Honeywell's project manager noted in a memorandum that the coordination meetings detracted from office engineering time, required preparation time and follow-up, and that "present manpower is insufficient to meet all of the requirements of the contract and make progress in accordance with the project schedule." In sum, the city's actions as testified to at length during the trial evidence that the city was proceeding in good faith to expedite the installation of the data logging equipment. The delays encountered were due in large part to Honeywell's own misfeasance. Also belying Honeywell's claim that it was frustrated and delayed by the city is the fact that construction had been completed at the Rockaway and Jamaica facilities and that Honeywell had been ordered to commence maintenance work at those locations. The Bowery Bay plant was

ready to be commissioned, and the host computer at Ward's Island was operational by early 1979. Only at the Tallman's Island plant had construction failed to reach the substantial completion stage, and Honeywell's contention that it could not proceed at that facility without certain compatible instrumentation to be provided by a city subcontractor is dubious in view of testimony to the effect that most of the incompatibility problems had been resolved in 1975 and 1976 with minimal effort, and that the remaining problems were no bar to completion.

Contrary to Honeywell's assertions, the evidence adduced at trial clearly indicates that construction on the project was abandoned, not by the city in October 1980, but by Honeywell in early 1979. By letter dated March 2, 1979 Honeywell's attorney informed the city that with regard to the project,

"[The] past and prospective delays are so substantial that Honeywell considers the contract breached by City and does not consider that it is bound to proceed further with the work.

"Honeywell has instructed me to start suit for the monies earned, including retained amounts, and for damages."

In a memorandum to corporate executives dated August 8, 1979, Joseph Marhoeffer, Honeywell's house counsel, summarized the situation as follows:

"a) We [Honeywell] terminated the contract in February 1979;

"b) We have stopped all work including warranty and maintenance work;

"c) We offered to negotiate an amicable wrap-up of the job; and

"d) We have had no tangible progress in negotiating a wrap-up."

Implicit in these statements is the fact that Honeywell could have proceeded with the project and completed installing the instrumentation if it had so wished. In a memorandum dated February 16, 1979, Mr. Marhoeffer, in examining the options open to Honeywell, noted that, "We could complete the job and sue for damages". In light of this evidence, and the abundant testimony as to Honeywell's capability to complete their contractual obligations at all five locations, their contention that they were prevented from finishing the work by the city is disingenuous at best.

Inasmuch as Honeywell's claim for damages, whether characterized as due to prevention or abandonment by the city, is essentially one for delay damages it must be dismissed. Honeywell is bound by the exculpatory provisions of article 13 of the agreement into which it has freely entered. Considering the

evidence in the light most favorable to Honeywell, we are of the opinion that the plaintiff failed to show, prima facie, that any injuries it may have sustained were the result of actions motivated by bad faith and malicious intent, or conduct amounting to gross negligence (*Kalisch-Jarcho, Inc. v City of New York, supra; Novak & Co. v New York City Housing Auth.,* 105 AD2d 665). Accordingly, the complaint should be dismissed (*see, Gottlieb Contr. v City of New York,* 86 AD2d 588, *affd* 58 NY2d 1051; *see also, Corinno Civetta Constr. Corp. v City of New York,* 107 AD2d 610).

Were dismissal of the complaint not mandated we would remand for a new trial. Of the three bases of liability charged, only one dealt with the standards of municipal liability promulgated by the Court of Appeals in *Kalisch-Jarcho* (*supra*). The trial court's further charge on abandonment, i.e., that Honeywell could recover if it could show that the city prevented or frustrated completion for an unreasonably long period of time, was not supported by the evidence. It was established to the contrary that Honeywell possessed the capability to finish construction in 1979, and had in fact completed a substantial portion of the project when it terminated its efforts. In like manner the trial court's charge placing a sole nondelegable duty upon the city to coordinate the work of each contractor was erroneous inasmuch as the evidence indicated that Honeywell had failed to attend coordination meetings in violation of its contractual duty to do so. Since the city's request for interrogatories was denied and the jury returned a general verdict, it is impossible to determine the basis of liability used by the jury in coming to their determination. As there was insufficient proof to sustain each of the theories of liability charged, the judgment cannot stand (*see,* CPLR 4111; *Forman v Davidson,* 74 AD2d 505).

Accordingly, the judgment, Supreme Court, New York County (Kaplan, J.), entered November 29, 1983 after a jury trial awarding damages to plaintiff in the amount of $1,371,496.97 including interest in the amount of $145,055.37 and costs in the amount of $593, should be reversed, on the law, without costs, and the complaint dismissed.

KUPFERMAN, CARRO and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 29, 1983, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated and the complaint dismissed.