OPINION OF THE COURT
Simons, J.
In Kalisch-Jarcho, Inc. v City of New York (58 NY2d 377), we reaffirmed the rule that contract clauses barring a contractor from recovering damages for delay in the performance of a contract are valid, that they will prevent recovery of damages resulting from a broad range of reasonable and unreasonable conduct by the contractee if the conduct was contemplated by the parties when they entered into the agreement, but that they will not excuse or prevent the recovery of damages resulting from the contractee’s grossly negligent or willful conduct, i.e., conduct which "smacks of intentional wrongdoing” (supra, at p 385). The common legal issue in the four appeals now before us is whether that standard is applicable when the delays caused by the contractee were not contemplated at the time the parties entered into the contract. The Appellate Division, First Department, interpreted the Kalisch-Jarcho decision as holding that the city’s no-damage-for-delay clause barred contractors from recovering *306 damages for all delays, contemplated or uncontemplated, and it dismissed the complaint in each action. Our decision in Kalisch-Jarcho did not decide the issue, however, nor did it change the existing rule which provides that damages resulting from uncontemplated delays caused by the contractee may be recovered despite the existence of a broad exculpatory clause relieving the contractee from liability. We now reaffirm that rule. Thus, although we agree with the Appellate Division’s conclusions that plaintiffs in Corinno Civetta and Honeywell failed to establish a prima facie case of liability against the city and that their causes of action for delay damages should be dismissed, we differ with its reasoning. In Catapano and Nab-Tern, however, the city’s moving papers are insufficient to warrant relief and the motions for summary judgment should have been denied.
I
The claim of Corinno Civetta arises out of a contract by which plaintiff was to reconstruct and install approximately 245 feet of combined sewer beneath the west side of Central Park between West 61st Street and Columbus Circle at a price of $207,061. The contract was executed on September 13, 1979 and by its terms was to be completed within 100 consecutive days. Work began on October 1, 1979 but was not completed until December 1980. Plaintiff brought this action seeking to recover various items of damage including damages of $162,-343 resulting from actions by the city which it alleges delayed the project. Trial Term denied the city’s motion for partial summary judgment dismissing the cause of action for delay damages and granted plaintiff’s cross motion for partial summary judgment on the remaining causes of action. The city appealed only the denial of its motion and the Appellate Division reversed, granted the motion, and dismissed the cause of action for delay damages (107 AD2d 610). The remaining causes of action have been settled, thus presenting a final order for review.
In Catapano plaintiff is seeking damages in the amount of $1,850,000 for delays in completing its contract to construct certain sewers in Queens which allegedly were caused by the city. The parties executed the contract in June 1977 for a total contract price in excess of $3,850,000 and work was to commence on August 8, 1977. Sewer construction was scheduled to be completed by September 21, 1978 and street resto *307 ration was to be accomplished within an additional 100 consecutive days. The project was not finished, however, until March 2, 1980. The city’s motion for summary judgment dismissing the complaint, or alternatively to strike the complaint under CPLR 3126 for failure to answer interrogatories, was denied by Special Term. On appeal, the Appellate Division modified by granting the city’s motion for summary judgment to the extent of dismissing the second cause of action for delay damages and otherwise affirmed (107 AD2d 640). The parties have stipulated to discontinue the remaining causes of action with prejudice.
The claim in Honeywell arises out of a contract for the installation and maintenance of a system of instrumentation and data logging equipment at the city’s sewage treatment plants at Rockaway, Jamaica, Bowery Bay, and Tallman’s Island at a price of $1,600,000. The contract was executed in August 1973 and provided that installation of the equipment was to be completed in three and one-half years, by February 1977, and that thereafter plaintiff would maintain the system at each of the four plant locations for an additional two years. Plaintiff terminated work at all plants in February 1979, the date originally scheduled for completion of all its contract obligations, with the installation work unfinished. It instituted this action in 1981 seeking damages on a quantum meruit basis for $1,342,000, which represented the difference between what it claimed was the reasonable value of the work performed and the payments already received. The city counterclaimed for the cost of completing the system and consequential damages, alleging abandonment and breach of contract by plaintiff. Following a trial, the jury returned a verdict in favor of plaintiff and against the city for $1,225,845 and judgment was entered on the verdict. The city’s counterclaims were dismissed. The Appellate Division reversed the judgment, dismissed plaintiff’s complaint and affirmed the order dismissing the city’s counterclaims (108 AD2d 125).
The contract in Nab-Tern required plaintiff to perform services as general contractor for the reconstruction of Yankee Stadium at a price of $22,220,000. By its terms, work was to commence on January 11, 1974 and be completed by February 6, 1976. The project was not finished until April 14, 1976. Plaintiff brought this action in 1978 alleging several causes of action including one for delay damages totaling $5,744,267. Special Term denied the city’s motion for partial summary judgment dismissing the fourth cause of action for *308 delay damages and granted plaintiff’s cross motion to amend its complaint to allege willful misconduct and gross negligence by defendant in the cause of action for delay damages. The Appellate Division reversed, granted the city’s motion and denied plaintiff’s cross motion (111 AD2d 56). The court then granted plaintiff leave to appeal to this court on a certified question.
Plaintiffs present three legal issues.
First, all four plaintiffs contend that the Appellate Division erred in dismissing their claims for delay damages on the basis of the exculpatory clause contained in the contracts. This is so, they claim, (a) because the rule set forth in Kalisch-Jarcho does not apply to uncontemplated delays and the court failed to consider whether the delays in question were contemplated or uncontemplated, and (b) because even if it is contended that the delays were contemplated when the parties entered into the contracts there are factual questions which must be decided to resolve that issue and to resolve whether the city’s conduct in causing the delays amounted to willful misconduct, bad faith or gross negligence. For its part, the city asserts that under the broad exculpatory clause contained in the contracts, all claims for delay damages are barred unless deliberate and intentional misconduct is established.[1] Alternatively, it contends that even if the contemplation of the parties is relevant it is entitled to judgment as a matter of law because there are no questions of fact in any of the actions warranting trials.
A second issue, raised only in Honeywell, is whether the city’s conduct was so unreasonable and the resulting delays so protracted that the city may be charged with abandoning or breaching the contract, conduct which entitles Honeywell to recover damages notwithstanding the contract’s exculpatory clause.
Finally, plaintiffs Catapano and Nab-Tern allege that a substantial portion of the damages they claim are not barred by the exculpatory clause of the contract but were incurred *309 because the city hindered or interfered with the efficient performance of their work during the term of the contract.
II
A clause which exculpates a contractee from liability to a contractor for damages resulting from delays in the performance of the latter’s work is valid and enforceable and is not contrary to public policy if the clause and the contract of which it is a part satisfy the requirements for the validity of contracts generally (see, Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384, supra; Peckham Rd. Co. v State of New York, 32 AD2d 139, 141, affd no opn 28 NY2d 734; Norcross v Wills, 198 NY 336, 341; Wright & Kremers v State of New York, 238 App Div 260, 261, mod on other grounds 263 NY 615; Validity and Construction of "No Damage” Clause with Respect to Delay in Building or Construction Contract, Ann., 74 ALR3d 187, 203-206). The rule is not without its exceptions, however, and even exculpatory language which purports to preclude damages for all delays resulting from any cause whatsoever are not read literally (see, Norman Co. v County of Nassau, 27 AD2d 936, 937; see, e.g., Cauldwell-Wingate Co. v State of New York, 276 NY 365; Wright & Kremers v State of New York, 238 App Div 260, mod 263 NY 615, supra; Waples Co. v State of New York, 178 App Div 357). Generally, even with such a clause, damages may be recovered for: (1) delays caused by the contractee’s bad faith or its willful, malicious, or grossly negligent conduct, (2) uncontemplated delays, (3) delays so unreasonable that they constitute an intentional abandonment of the contract by the contractee, and (4) delays resulting from the contractee’s breach of a fundamental obligation of the contract.
We discussed the first of these exceptions at length in Kalisch-Jarcho, Inc. v City of New York (58 NY2d 377, supra) and the parties agree that the rule set forth there forecloses recovery for contemplated delays in the absence of proof of willful or grossly negligent conduct. Their present disputes center on the applicability and scope of the other three exceptions to the general rule.
A. Uncontemplated Delays
It has been settled for some time that exculpatory clauses will not bar claims resulting from delays caused by *310 the contractee if the delays or their causes were not within the contemplation of the parties at the time they entered into the contract (Peckham Rd. Co. v State of New York, 32 AD2d 139, 141, affd no opn 28 NY2d 734, supra; see, Cauldwell-Wingate Co. v State of New York, 276 NY 365, 375, supra; People ex rel. Wells & Newton Co. v Craig, 232 NY 125, 143-144; Wilson & English Constr. Co. v New York Cent. R. R. Co., 240 App Div 479, 482; Waples Co. v State of New York, 178 App Div 357, 360-361, supra). The exception is based on the concept of mutual assent. Having agreed to the exculpatory clause when he entered into the contract, it is presumed that the contractor intended to be bound by its terms. It can hardly be presumed, however, that the contractor bargained away his right to bring a claim for damages resulting from delays which the parties did not contemplate at the time (see, Peckham Rd. Co. v State of New York, supra, at pp 141-142; Johnson v City of New York, 191 App Div 205, 207-208, affd no opn 231 NY 564; Ann., 74 ALR3d 187, 224-225). Thus, even broadly worded exculpatory clauses, such as the one at issue in these actions, are generally held to encompass only those delays which are reasonably foreseeable, arise from the contractor’s work during performance, or which are mentioned in the contract (Peckham Rd. Co. v State of New York, supra, at p 141).
Although the Appellate Division, and at least one commentator, have interpreted our decision in Kalisch-Jarcho otherwise (see, Reiss, Kalisch-Jarcho’ — Its Effect on the Construction Industry, NYLJ, Apr. 13, 1983, pp 1, 28), nothing we said there changed the established law on this subject. Prior to Kalisch-Jarcho, a contractor could recover for contemplated delays resulting from conduct of the contractee characterized by a number of nebulous labels found in the cases, ranging from intentional acts or acts done in bad faith to those loosely described as "unlawful” or even in terms approaching a simple negligence standard. It was largely to avoid the imprecision of these different labels and the confusion which resulted from their use that we held that the effect of the exculpatory clause could be overcome only if the qualitative level of misconduct by the contractee was the equivalent of an intentional wrong (see, Kalisch-Jarcho, Inc. v City of New York, supra, at p 386, n 7). Thus, we held in Kalisch-Jarcho that the city was entitled to a charge that the contractor could not recover delay damages absent a showing of the city’s willful, fraudulent or grossly negligent conduct. In doing so, *311 we specifically noted that the jury, in response to a special interrogatory, had determined that the delays at issue were contemplated by the parties at the time they entered into the contract (see, id., at p 382). It was only with that fact established that the contractor needed to prove, as the city contended, the deliberate nature of the city’s conduct in causing the delays. We did not consider, let alone abolish, the longstanding exception to the general rule, stated in the several cases cited above, that uncontemplated delays are outside the scope of the exculpatory clause and are therefore actionable (see, id., at pp 385, 386, n 7; see also, Stevenson Corp. v County of Westchester, 113 AD2d 918; Dal Constr. Corp. v City of New York, 108 AD2d 892; Bradley Envtl. Constructors v Village of Sylvan Beach, 98 AD2d 973).
This is evident from the Kalisch-Jarcho record. First, we relied on Peckham Rd. Co. v State of New York (32 AD2d 139, affd no opn 28 NY2d 734, supra), a decision which explicitly set forth the exception that uncontemplated delays are actionable notwithstanding the existence of an exculpatory clause (see, Kalisch-Jarcho, Inc. v City of New York, supra, at p 385, citing to pp 141-142 of Peckham Rd. Co. v State of New York, supra). Second, the city itself recognized in Kalisch-Jarcho that whether or not the delays were contemplated was crucial to the outcome of its case. Thus, it requested that the court charge the jury that if it found that the delays involved were foreseeable, i.e., contemplated (see, Peckham Rd. Co. v State of New York, supra, at p 141), and that it did not act with deliberate intent to cause them, then plaintiff could not recover (see, record on appeal, at A3791). In its brief to this court, the city relied on the Peckham Rd. decision. Asserting that the jury had correctly determined that the delays at issue had been contemplated, it urged that the only issue presented was what standard of fault the contractor was required to prove on the part of the city before it could recover delay damages notwithstanding the exculpatory clause (defendant’s brief on appeal, at 39-42).
Finally, in Gottlieb Contr. v City of New York (58 NY2d 1051, affg on mem at 86 AD2d 588), a case argued and decided with Kalisch-Jarcho, the city urged us to adopt the rule of law they now seek to infer from the court’s Kalisch-Jarcho opinion. It contended there, as it does now, that its no-damage-for-delay clause was broad enough to bar claims for any delays, whether contemplated or not, and that it was so intended (see, city’s brief on appeal, at 31-34). We rejected the city’s argu *312 ments in Gottlieb Contr. and affirmed a decision of the Appellate Division which found the rule in Peckham Rd. dispositive and which held that the city was not liable because the delays were contemplated. We affirmed on the Appellate Division memorandum and therefore did not address the city’s argument. Manifestly, however, the clause was not intended to bar all delay damage claims because article 42 of the city’s contracts provides a procedure for filing such claims. Neither article 42 nor the contract generally speaks to delays deliberately caused by the city or alerts the contractor to any qualification on his right to claim damages, and the contractor could well presume from the language that the city intended to recognize a procedure for its assertion of any delay claims provable under existing law.
B. Abandonment and Breach of Contract
In Honeywell, plaintiff contends that the exculpatory clause does not insulate the city from liability because it does not seek delay damages but damages for the city’s abandonment or breach of the contract. The city asserts that this is simply a change in labels and that plaintiff may not avoid the effect of the exculpatory clause by calling its claim something it is not. It contends, and the Appellate Division found, that the claim, by whatever name called, is a claim for delay damages and the city is not liable under the Kalisch-Jarcho standard.
Notwithstanding the city’s contention, however, it has been recognized that in certain limited circumstances the exculpatory clause may be avoided if the contractee causes delays which are "so great or so unreasonable that they may fairly be deemed equivalent to [its] abandonment of the contract” (People ex rel. Wells & Newton Co. v Craig, 232 NY 125, 144, supra; American Bridge Co. v State of New York, 245 App Div 535, 541-542; see also, Brady & Co. v Board of Educ., 222 App Div 504, 505-506). We placed an important limitation on this exception in our decision in Kalisch-Jarcho when we recognized that a broad no-damage-for-delay clause would be meaningless unless it encompassed within its scope a range of unreasonable as well as reasonable delays because any other application would permit the exception to swallow up the general rule (58 NY2d 377, 384, supra, citing Mack v State of New York, 122 Misc 86, 88, affd no opn 211 App Div 825). Thus, to avoid the risk of the exculpatory clause and recover on the ground of abandonment, a contractor must establish *313 that the contractee is responsible for delays which are so unreasonable that they connote a relinquishment of the contract by the contractee with the intention of never resuming it (see, Kalisch-Jarcho, Inc. v City of New York, supra, at p 386, & n 8).
A contractee’s breach of contract is also recognized as an exception to the enforceability of exculpatory clauses but, as with abandonment and for the same reason, the exception is applied to an especially narrow range of circumstances. Because the exculpatory clause is specifically designed to protect the contractee from claims for delay damages resulting from its failure of performance in ordinary, garden variety ways, delay damages may be recovered in a breach of contract action only for the breach of a fundamental, affirmative obligation the agreement expressly imposes on the contractee. Typical of such claims are those in which the contractee has failed in its obligation to obtain title to the work site or make it available to the contractor so that it may commence construction of the agreed upon improvements (see, Bianchi & Co. v State of New York, 28 NY2d 536, affd on opn at 17 AD2d 38, 41-42; Cauldwell-Wingate Co. v State of New York, 276 NY 365, 379-380, supra [Lehman, J., dissenting]; Wilson & English Constr. Co. v New York Cent. R. R. Co., 240 App Div 479, 482-483, supra; see also, Ann., 74 ALR3d 187, 221-222).
C. Inefficiencies During Contract Period
Plaintiffs Catapano and Nab-Tern attempt to distinguish their claims for damages resulting from a delay of the project beyond the scheduled completion date from those for increased costs in labor, materials, and equipment occurring prior to the expiration of the contract period. They place in the first category conduct of the city which prevented them from going ahead with the job, the costs of an idle workforce, for example, and they agree that the exculpatory clause could bar such claims. The second category includes conduct of the city during the contract period which made completion more expensive because it made performance of the contract inefficient and disorganized. Plaintiffs assert they are entitled to damages for costs resulting from the latter type of conduct notwithstanding the exculpatory clause (see, Green Plumbing & Heating Co. v Turner Constr. Co., 742 F2d 965, cert denied — US —, 105 S Ct 2328; Paul Hardeman, Inc. v United States, 406 F2d 1357). All delay damage claims seek compensation for *314 increased costs, however, whether the costs result because it takes longer to complete the project or because overtime or additional costs are expended in an effort to complete the work on time. It is of no consequence that the obstruction, whatever its cause, occurs during the term of the contract or afterwards or whether it disrupts the contractor’s anticipated manner of performance or extends his time for completion. The claims are claims for delay and the exculpatory clause was drafted and included in the contract to bar them.
We turn now to the application of these rules to the facts presented in each appeal.
Ill
A. Corinno Civetta
Plaintiff cites three causes for its damages: the city’s moratorium on street openings, three subsurface conditions that were not disclosed on the city’s plans, and delay resulting from a dispute with the city over the type of joint pipe to be used on the project.
Prior to the execution of the contract, the city had declared a moratorium on street openings throughout the city. The damages plaintiff claims on this count are costs resulting from the city’s refusal to authorize it to make additional expenditures for overtime work so that it could complete the entire project before the moratorium took effect. Plaintiff claims that because overtime was not authorized it could not complete the project until winter, after the moratorium was lifted, and that it sustained substantial damages as a result. However, addendum No. 2 to the General Conditions of the agreement specifically warned plaintiff that no work would be permitted during the moratorium. The possible delay arising from it was clearly contemplated by the parties and the city’s refusal to authorize overtime raises no question of gross negligence, bad faith or intentional misconduct on the part of the city.
The second basis for plaintiff’s claim, unanticipated subsurface obstructions, clearly addresses delays contemplated by the parties, for by the terms of the contract plaintiff expressly assumed responsibility for any "loss or damages arising out of * * * any unforeseen obstructions or difficulties which may be encountered” during performance of the contract, including damages "caused or occasioned by his relying upon such records, reports or information furnished by any City Depart *315 ment”. That being so, it cannot recover damages for delays it suffered as a result of encountering unknown subsurface conditions (see, Conduit & Found. Corp. v State of New York, 52 NY2d 1064,1066).
Furthermore, plaintiff cannot succeed on this claim because it was responsible for a delay of several months that prevented construction quite independently of any delay resulting from the subsurface conditions. That delay involved an application by plaintiff to change the pipe specifications. Although the contract required mechanical joint pipe, in November 1979 plaintiff attempted to substitute Tyton joint pipe without indicating to the city that the request was for a substitution of materials which differed from the contract requirements. By the time the city learned of the attempted substitution and rejected it, a strike at the plant of plaintiff’s supplier caused further delay in obtaining the joint pipe. By the time proper pipe was delivered, the city had authorized work to proceed on the subsurface conditions.
Accordingly, plaintiff failed to establish the existence of any issue of fact not excused by the no-damage-for-delay clause and summary judgment dismissing the third cause of action for delay damages was properly granted by the Appellate Division.
B. Honeywell
Honeywell’s claims are predicated on the city’s alleged failure to remedy two problems at the Bowery Bay and Tallman’s Island sites two years after the scheduled completion date for all construction work. By the terms of the contract Honeywell undertook to install various sensing devices to measure flow, pressure, and temperature in the city’s four sewage treatment plants. These signals were then transmitted to data loggers, or local computers, and then to a central computer installed at Ward’s Island. Before the signals were transmitted to the computers, they went through central panel boards. Honeywell’s contractual responsibility included supervising the work generally and installation of the instrumentation and the data logging equipment in particular. The wiring to transmit the signals was undertaken by separate electrical contractors at each site and the control panel boards were supplied by another contractor, Fisher & Porter, Inc.
Honeywell's claims are based on (1) the omission of wiring conduits in the city’s design plans and specifications for the *316 Bowery Bay and Tallman’s Island plants and (2) the incompatibility of control panel boards supplied by Fisher & Porter, Inc. with Honeywell’s instrumentation. It sought damages in causes of action based on abandonment, breach of contract and delays caused by the city’s gross negligence.
Insofar as the delay caused by the omitted wiring is concerned, plaintiff concedes that the city did prepare design changes and issue change orders to resolve the problem but charges that despite these extensive change orders all the necessary wiring to connect its equipment was still not in place at Bowery Bay and Tallman’s Island when it left the jobsites in February 1979. It attempted to place responsibility for this problem entirely on the city. The city did try to expedite the wiring installation, however, and Honeywell acknowledged as much in correspondence in which it specifically recognized that the delays were largely attributable to the electrical contractors, not the city, that the city was trying to correct the problem and in which it stated that Honeywell intended to hold the electrical contractors responsible for its increased costs. This was consistent with the provisions of article 12 of the contract which provided: "Contractor shall coordinate the work to be done hereunder with the work of * * * other contractors * * * engaged in performing other work on this project” and that if a contractor sustains damage "through any act or omission of any other contractor * * * the Contractor shall have no claim against the City for such damage, but shall have a right to recover such damage from the other contractor”. Notwithstanding plaintiff’s claims, it is apparent that the efforts exerted by it and by the city to speed up the electrical contractors were successful because by January 1978 plaintiff itself estimated that the necessary wiring at the two plants would be completed "in the near future”.
Considering the statements in plaintiff’s internal correspondence that the city was not ignoring the omitted wiring problem but rather was taking steps to remedy it, plaintiff’s notification to the electrical contractors that it held them responsible for the delay and the recognition in article 12 of possible delays in coordinating work of the various contractors, plaintiff has failed to raise any factual issue that the problem was not contemplated by the parties or that the city’s conduct could be found willful, malicious, in bad faith or grossly negligent. Moreover, viewing the evidence in the light most favorable to plaintiff, as we must, there is no evidence to support plaintiff’s claim that the city’s conduct was so unrea *317 sonable that it connoted an abandonment of the contract and Honeywell has failed to indicate, let alone establish, what fundamental, affirmative obligation expressed in the contract the city allegedly failed to perform which would support a cause of action for breach of contract.[2]
With respect to the claimed incompatibility between plaintiffs data logger and the Fisher & Porter panel boards at Tallman’s Island, plaintiff contends that the problem arose upon examination of working drawings in 1975, it still existed in 1979, and that the city’s failure to resolve the incompatibility during this four-year period is prima facie evidence of abandonment or gross negligence. Although plaintiff suggests that this problem was not contemplated by the parties and therefore that it need not prove gross negligence or abandonment to avoid the exculpatory clause, the contract unambiguously proves otherwise. Indicative is a clause in the General Conditions which specifies that all contractors will exchange working drawings, examine them and report "any interferences or objections” to the project engineer "in order to avoid delays in [the] progress of construction”. Thus, the obligation rested on plaintiff to coordinate its work with other contractors generally and also to exchange drawings with Fisher & Porter and pursue and resolve promptly any incompatibility problems. One of the means of resolving these problems was regular monthly meetings with all the contractors. The evidence indicates that Honeywell’s failure to promptly exchange drawings and attend such meetings was a principal cause of the delays.
The city’s activities in attempting to complete this project as soon as possible despite numerous problems and delays and its acceptance of plaintiff’s work at three out of the five sites *318 of this interrelated project refutes any claim of abandonment based upon the panel boards. Nor has plaintiff pointed to any evidence in the record which would support a finding that the city was grossly negligent in failing to remedy the incompatibility problem at Tallman’s Island. There was uncontradicted testimony at trial that there were two incompatibility problems between plaintiffs equipment and the Fisher & Porter panel boards. The first surfaced in 1975 and was resolved within a few months. The second arose in late 1978 or early 1979, just prior to plaintiffs termination of work in February 1979. Plaintiff cannot predicate a claim of gross negligence on the first delay and the fact that a problem still existed with the second at the time of trial in 1983 is irrelevant to plaintiffs claim that it was entitled to treat the contract as abandoned in February 1979 and terminate its performance at that time. As with the wiring, the contract provisions clearly contemplated that incompatibility could present problems and inasmuch as the city’s conduct was not willful or grossly negligent, the claim for delay damages is barred.
In sum, we view the case, as did the Appellate Division, as one seeking damages for delays that were, as a matter of law, contemplated by the parties and plaintiffs evidence at trial failed to establish a prima facie case of the city’s liability. Accordingly, the Appellate Division properly reversed the judgment and dismissed plaintiffs complaint.[3]
C. Catapano and Nab-Tern
The city has failed to make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact in these actions (see, Winegrad v New York Univ. Med. Center, 64 NY2d 851, 853). Indeed, its moving papers in both actions, which contain little more than conclusory affirmations of counsel reciting portions of our decision in Kalisch-Jarcho, *319 Inc. v City of New York (58 NY2d 377, supra) with a copy of the no-damage-for-delay clause from the contract annexed, amounted to no more than motions to dismiss for failure to plead deliberate intent, bad faith or gross misconduct. Because the city’s moving papers contained no proof that the delays in question were contemplated, plaintiffs were not required to plead the Kalisch factors in order to state a cause of action for delay damages. In Catapano the order granting summary judgment should be reversed, therefore, and defendant’s motion for summary judgment denied, without prejudice to any further motion the city may be advised to make at Special Term on additional papers. In addition, the court did not abuse its discretion as a matter of law in denying defendant’s motion to dismiss the complaint pursuant to CPLR 3126 for failure to answer interrogatories insofar as no showing of prejudice to the city from the delay has been made. Similarly, the Appellate Division should not have granted defendant’s motion for summary judgment in Nab-Tern, and the case should be remitted to that court for the exercise of its discretion on plaintiffs cross motion to amend its complaint.
Accordingly, in Corinno Civetta Constr. Corp. v City of New York, the order of the Appellate Division should be affirmed, with costs; in Catapano Co. v City of New York, the order of the Appellate Division should be reversed, with costs, and defendant’s motion for summary judugment denied; in Honeywell, Inc. v City of New York, the order of the Appellate Division should be affirmed, with costs, and defendant’s cross appeal dismissed upon the ground that the Appellate Division order, while designated a reversal, is, in fact, a modification by which defendant is not aggrieved (see, CPLR former 5601 [a] [iii]); and in Nab-Tern Constructors v City of New York, the order of the Appellate Division should be reversed, with costs, the order of Special Term reinstated, and the case remitted to the Appellate Division for the determination of issues not reached by that court with respect to plaintiffs cross motion to amend the complaint. Question certified answered in the negative.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
In Corinno Civetta Constr. Corp. v City of New York: Order affirmed, with costs.
In Catapano Co. v City of New York: Order reversed, with costs, and defendant’s motion for summary judgment denied.
*320 In Honeywell, Inc. v City of New York: On plaintiffs appeal, order affirmed, with costs. Defendant’s cross appeal dismissed.
In Nab Tern Constructors v City of New York: Order reversed, with costs, order of Supreme Court, New York County, reinstated, and case remitted to the Appellate Division, First Department, for determination of issues not reached by that court with respect to plaintiff’s cross motion to amend the complaint. Question certified answered in the negative.

. That clause, article 13 of the contracts involved in these actions, is identical to the clause at issue in Kalisch-Jarcho. It provides: "The Contractor agrees to make no claim for damages for delay in the performance of this contract occasioned by any act or omission to act of the City or any of its representatives, and agrees that any such claim shall be fully compensated for by an extension of time to complete performance of the work as provided herein.”

. The city had accepted plaintiff’s work at the Jamaica, Rockaway and Ward’s Island sites by December 1978 and in August 1979 plaintiff’s in-house counsel admitted in an interoffice memorandum that "Bowery Bay was and is in a state which would allow Honeywell to come in and complete its work”. That same month electrical contractors at Tallman’s Island completed installation of the omitted wiring and were awaiting plaintiff’s performance of its contractual duty to supervise connection of the wiring to its instrumentation. Unfortunately, plaintiff had walked off the job six months earlier. That most of these wires remained unconnected in May 1983, although only inches away from the termination point, does not establish that the city abandoned the contract but rather indicates that plaintiff failed in its contractual obligation to supervise this final step of connecting the wiring which was essential to the successful completion of the contract.

. [4] The city has taken a cross appeal from that portion of the resettled order of the Appellate Division which purports to "affirm” the postverdict order dismissing its counterclaims. The Appellate Division order, although denominated a reversal of Supreme Court’s judgment and an affirmance of its order, effects a modification which does not aggrieve the city. Accordingly, the city’s cross appeal should be dismissed (see, CPLR former 5601 [a] [iii]). In view of our disposition of the case, it is not necessary for us to consider the city’s claim, well documented in the record, that plaintiff deliberately attempted to frustrate completion of the project because it had underbid the job and was losing money.