■ A.H.A. GENERAL CONSTRUCTION, INC., Appellant, v NEW YORK CITY HOUSING AUTHORITY, Respondent. [661 NYS2d 213] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered January 17, 1996, which granted defendant-respondent's motion for summary judgment, and denied plaintiff's cross motion for a declaration that the work performed was extra work, and for an inquest to determine the amount owed for said work, unanimously modified, on the law, without costs, defendant's motion is denied, and this matter is remanded for further proceedings.

On October 5, 1990, the New York City Housing Authority ("Housing Authority") awarded two construction contracts to plaintiff A.H.A. General Construction, Inc. ("AHA"). One contract called for the rehabilitation of the three buildings and certain open spaces located at Jennings Street in the Bronx ("Jennings Project"), and the other involved the rehabilitation of three buildings at Hoe Avenue, also in the Bronx ("Hoe Project"). The contract price for the Jennings Project was $2,316,000, and for the Hoe Project was $2.41 million.

AHA claims that throughout the duration of both projects, the Housing Authority, as was its custom, frequently issued oral or written change orders requiring AHA to perform "extra work" (i.e., work other than that required by the contract at the time of its execution). AHA further asserts that on the oc-

casions when extra work was directed, it sought compensation for such work either by obtaining a written change order from the Housing Authority approving the additional work, or by submitting correspondence demonstrating AHA's position that the work was not required by the contract, and therefore was extra work requiring additional compensation. Several disputes arose over whether the work performed was extra work, or work required under the contract. On some occasions the Housing Authority issued the requested change orders, on others it refused, and on still others it issued change orders only to subsequently rescind them.

By separate Notices of Claim dated October 29, 1993, AHA submitted its final requisition for payment on both projects. With respect to the Jennings Project, AHA asserted in its Notice of Claim that it had received additional drawings from the Housing Authority that were not included in the original contract, and that AHA had performed the work required by the additional drawings. AHA's Notice also stated that it had informed the Housing Authority of the additional work through correspondence at different stages in the project. AHA requested payment of $700,513.42 for extra work for the Jennings Project, and $205,126.34 for extra work on the Hoe Project. When AHA executed its contractor certificates, certifying its completion of the projects, it included a provision that there were "additional outstanding and unsettled items detailed in the previously submitted Notices of Claim." The City paid AHA the contractual amount for both projects, but refused to make any payment for additional work.

In January 1994, AHA commenced this action against the Housing Authority asserting four causes of action. The first and third causes of action alleged a breach of the Jennings and Hoe contracts, respectively, based on the Housing Authority's refusal to pay for extra work detailed in the Notices of Claim. The second and fourth causes of action sought recovery for unjust enrichment for the cost of the extra work on each project.

The Housing Authority moved for summary judgment dismissing the complaint, arguing that AHA had waived its right to recover for extra work by failing to comply with the notice and reporting requirements of the contract. Article 51 of the contract states that no action seeking compensation for extra work may be brought against the Housing Authority "unless the Contractor shall have strictly complied with all requirements relating to the giving of notice and or information with respect to such claims." The notice requirements in

Article 27 require, *inter alia*, that in the event the Housing Authority determines that the work being performed is not extra work, the contractor must notify it within 5 days that the work is being performed "under protest," or else the claim for extra work is waived. Also, a contractor claiming damages resulting from an act or omission of the Housing Authority is required to give notice within 5 days of the act or omission, and provide detailed statements and proof of damages within 30 days, or the claim would be waived. Under Article 28, a contractor performing extra or disputed work is required to furnish daily statements to the Housing Authority, during the performance of that work, including the name and number of each workman employed on the work; the number of hours employed; the character of the work; and the nature and quantity of any materials or equipment used.

AHA cross-moved for an order granting summary judgment, and an inquest to determine the amount of money damages due it. AHA's president James Liapakis, in his supporting affidavit, averred that the Housing Authority was "being less than truthful" and was "acting in bad faith" by suggesting that no documentation existed to support AHA's claim for extra work. Plaintiff's counsel noted the vast amount of correspondence between the parties on that issue, including requests by the Housing Authority to complete certain tasks, and AHA's detailed proposals responding to those requests. Liapakis further stated that certified payroll reports and daily activity reports were kept regarding all of the work, and that those records were voluminous, but could be produced if necessary. He alleged that "separate records for the extra work can not be kept because it is physically impossible to do so."

In its reply papers, AHA contended that the Housing Authority's practice of ordering extra work and then unilaterally cancelling or rescinding a change order encompassing that work, constituted "wrongful conduct" designed to obtain extra work at no additional cost. AHA also alleged that the Housing Authority intentionally misrepresented that certain architectural drawings were included in the initial construction agreement, when in fact they were added after the contract was signed.

The IAS Court granted the Housing Authority's motion for summary judgment on each cause of action, and denied AHA's cross motion. The court found that there was no dispute that AHA had failed to comply with the contract's notice and reporting requirements, and that the courts have "strictly enforced" those provisions. It further stated that although courts have

found a waiver where a contractor has substantially complied with notice and reporting requirements, no waiver will be found where the contract itself states that strict compliance is required. Since this contract required strict compliance, the IAS Court concluded that AHA was barred from recovering for the extra work. The court also rejected AHA's assertion that maintenance of separate documentation for extra work was "physically impossible." The IAS Court also dismissed the causes of action for unjust enrichment "because there is an express agreement covering the same subject matter."

By notice of motion dated April 3, 1996, AHA moved for reargument and renewal of the IAS Court's order. AHA reasserted its claim that the Housing Authority acted in bad faith by adding new drawings to the project while misrepresenting them as drawings from the original plan. It also made two new arguments, to wit, that much of the claimed extra work was exempt from the daily reporting requirements of Article 28 because payment for such work was to be made at previously agreed upon "unit prices," and that the Housing Authority waived strict compliance with the notice and reporting provisions because of the hundreds of instances in the past when it had negotiated payment for extra work without requiring technical compliance with those provisions. By order entered September 11, 1996, the IAS Court denied the motion to reargue and renew.

On appeal, AHA argues that material issues of fact exist precluding summary judgment as to whether the Housing Authority acted in bad faith, or was guilty of intentional misconduct in the performance of the contract. We agree.

We have previously held that a contractor waives its claims for extra work when it fails to strictly comply with the notice and reporting requirements contained in the standard New York City construction contracts and those contracts specifically state that strict compliance is required (see, MRW Constr. Co. v City of New York, 223 AD2d 473, lv denied 88 NY2d 803; Orlando Contr. Corp. v City of New York, 222 AD2d 244; Buckley & Co. v City of New York, 121 AD2d 933, lv dismissed 69 NY2d 742). While AHA contends otherwise, the record establishes that AHA did not strictly comply with these provisions of the contract.

However, exculpatory clauses intended to limit a contractee's liability will not always be enforceable (see, Corinno Civetta Constr. Corp. v City of New York, 67 NY2d 297, 309; Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-385). It has long been held that exculpatory clauses in a contract will not

be enforced where the contractee has acted in bad faith, or otherwise engaged in willful, malicious or grossly negligent conduct during its performance of the contract (*see, Corinno Civetta Constr. Corp. v City of New York, supra; Kalisch-Jarcho, Inc. v City of New York, supra*). As stated in *Kalisch-Jarcho* (*supra,* at 385), "an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing."

AHA has submitted sufficient evidence to raise an issue of fact as to whether the Housing Authority acted in bad faith. On several occasions, the Housing Authority directed AHA to perform certain work, executed change orders acknowledging that it was extra work and setting a price, and then subsequently rescinded those change orders and asserted that the work was required by the contract. The Housing Authority's innocent explanation for its decisions cannot be credited as a matter of law.

AHA also presents evidence that the Housing Authority misrepresented certain drawings as being included in the original contract. It produced a drawing, executed by the Department of Buildings in May 1990, which did *not* include the work now asserted by the Housing Authority to fall within the scope of the original contract. In response, the Housing Authority produced what was purportedly the same drawing, which was unexecuted and undated, that included the disputed work. AHA's president swore in his affidavit that the Housing Authority has falsely misrepresented that this drawing and many other drawings were included in the original contract, when in fact they were not. Clearly, if true, this "smacks of intentional wrongdoing" (*Kalisch-Jarcho, Inc. v City of New York, supra,* at 385).

In its unsuccessful motion to renew, reviewable pursuant to CPLR 5517 (a) and (b) (*see, Firedoor Corp. v Reliance Elec. Co.,* 56 AD2d 523), AHA also notes the long-standing practice between the parties on these and other contracts whereby the parties would negotiate over claimed extra work, and AHA would be paid for said work, notwithstanding its non-compliance with Articles 27, 28 and 51. Cumulatively, this evidence was sufficient to raise a triable issue of fact as to the Housing Authority's bad faith or gross negligence in performance of the contract (*see, Sommer v Federal Signal Corp.,* 79 NY2d 540, 554-555; *Castagna & Son v Board of Educ.,* 173 AD2d 405).

However, the IAS Court properly dismissed the unjust

enrichment claims since the existence of a valid written contract covering the same subject matter precludes quasi-contractual recovery (*see*, *Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 388). Concur—Milonas, J. P., Wallach, Tom and Mazzarelli, JJ.