*NASDI, LLC v. Skanska Koch Inc. Kiewit Infrastructure Co. (JV)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand twenty-four.

PRESENT:
> DENNY CHIN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————

NASDI, LLC,

> *Plaintiff-Counter-*
> *Defendant-Appellant*,

> v.                                                        No. 23-571

Skanska Koch Inc. Kiewit
Infrastructure Co. (JV), d.b.a.
Skanska Kiewit JV,

> *Defendant-Counter-*
> *Claimant-Appellee.*\*

———————————————————————
————————————————

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| For Plaintiff-Counter-Defendant-Appellant: | DOUGLAS W. EYRE (Mark L. McAlpine, *on the brief*), McAlpine PC, Auburn Hills, MI. |
|---|---|
| For Defendant-Counter-Claimant-Appellee: | ROBERT H. BELL (Paul Monte, *on the brief*), Peckar & Abramson, P.C., New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 10, 2023 judgment of the district court is **AFFIRMED**.

NASDI, LLC appeals from the district court's grant of summary judgment in favor of Skanska Koch Kiewit Inc. Infrastructure Co. (JV) ("SKK") on NASDI's claims for breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing. The parties' dispute stems from demolition work that NASDI subcontracted to complete for SKK after the Port Authority of New York and New Jersey selected SKK as the general contractor for a four-stage project to reconstruct the Bayonne Bridge between Staten Island and New Jersey. According to the subcontract, NASDI would handle demolitions in Stages 1 and 2, stand down during Stage 3, and resume demolition work in Stage 4. By the time Stage 2 wrapped up in December 2014, the project was already ten months behind schedule, and it became apparent that the start of NASDI's Stage 4 work

would be delayed significantly.  Though the subcontract had a "no-damages-for-delay" clause that barred NASDI from suing SKK over delays, it also set forth a procedure for NASDI to submit claims to SKK for additional compensation, as well as a protocol for splitting any delay-related settlements that the Port Authority paid to SKK.  At SKK's invitation, NASDI submitted a claim in mid-2016 in connection with the expected Stage 4 delays, which SKK forwarded to the Port Authority along with claims from SKK's other subcontractors.  The Port Authority indicated that it would pay out these claims in a bulk settlement to SKK, which would then allocate it among the subcontractors.

In December 2016, SKK sent NASDI a revised schedule indicating that Stage 4 work would begin in February 2017, about nineteen months later than what the parties had originally contemplated.  NASDI initially agreed to that schedule. But days later, NASDI demanded that SKK immediately settle its claim over the Stage 4 delays, even though SKK was still finalizing the bulk settlement with the Port Authority.  Several weeks later, NASDI sent SKK a notice of termination asserting that SKK had "abandoned" the subcontract due to the delays and SKK's failure to negotiate NASDI's claim in good faith.  Sp. App'x at 14.  Though NASDI quickly attempted to rescind that termination, SKK declared NASDI to be

3

in default and hired a replacement demolition firm to help complete the work. That substitute performance cost SKK an extra $24 million, which it covered by making a demand on NASDI's performance bond.

NASDI filed this action in May 2017, asserting claims for breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing. SKK moved for summary judgment on all three claims, which the district court granted. This appeal followed.

We review a district court's grant of summary judgment *de novo*, construing facts in the light most favorable to the nonmoving party and resolving all ambiguities and drawing all reasonable inferences against the moving party. *See Kee v. City of New York*, 12 F.4th 150, 157 (2d Cir. 2021). Summary judgment is appropriate only when there is no genuine dispute of material fact that would allow a reasonable jury to rule in favor of the nonmoving party. *See* Fed. R. Civ. P. 56(a).

## I. The No-Damages-For-Delay Clause

NASDI first takes issue with the district court's grant of summary judgment on its breach of contract claim, which the district court held was barred by the

4

subcontract's no-damages-for-delay clause.[1]  Such clauses – which prevent a plaintiff from suing a defendant over delays that occur while performing on a contract – are generally valid and enforceable in New York.  *See Corinno Civetta Constr. Corp. v. City of New York.*, 67 N.Y.2d 297, 309 (1986).  And while New York law recognizes several exceptions under which a plaintiff can sue a defendant for delay, plaintiffs face a "heavy burden" in seeking to invoke them.  *N. Star Contracting Corp. v. City of New York*, 611 N.Y.S.2d 11, 12 (1st Dep't 1994).[2]

NASDI contends that two of these exceptions apply here.  *First*, it argues that the clause was unenforceable because the delays here – nineteen months in total[3] – were "uncontemplated."  *Corinno*, 67 N.Y.2d at 309.  But New York

---

[1] The subcontract provides the no-damages-for-delay clause in section 13.1:  "13.1 NO DAMAGE FOR DELAY.  Except as otherwise provided . . . , Subcontractor agrees that it shall have no Claim against Contractor for any loss or damage it may sustain through delay, disruption, suspension, stoppage, interference, interruption, compression, or acceleration of Subcontractor's Work ('Delay Damages') caused or directed by Contractor for any reason, and that all such Claims shall be fully compensated for by Contractor's granting Subcontractor such time extensions as it is entitled to as a result of any of the foregoing."  App'x at 43.

[2] To the extent NASDI relies on a third exception – bad faith – to the enforceability of a no-damages-for-delay clause, we discuss the issue below in our analysis of the claims for breach of the covenant of good faith and fair dealing.

[3] Stage 4 was scheduled to commence in July 2015 but did not begin until February 2017. Though NASDI asserts that it had to contend with twenty-nine months of delays – ten months in completing Stages 1 and 2 and nineteen months in starting Stage 4 – that figure is inaccurate as it double counts the ten-month delay in finishing Stages 1 and 2.  Indeed, Stage 4 started nineteen months later than originally scheduled, which *includes* the ten months of overrun accrued in Stages 1 and 2.  *See* App'x at 100 (explaining that NASDI's "original contract" specified a Stage

5

courts have recognized that lengthy delays are generally foreseeable – and thus not uncontemplated – in complex construction projects. *See Manshul Constr. Corp. v. Bd. of Educ. of N.Y.C.*, 559 N.Y.S.2d 260, 261 (1st Dep't 1990) (reasoning that the "nature of the work" rendered such delays foreseeable); *Gottlieb Contracting, Inc. v. City of New York*, 446 N.Y.S.2d 311, 312 (1st Dep't 1982) (delays caused by "other prime contractors' inaction" and "faulty performance" are "precisely within the contemplation of the exculpatory clauses"). Consequently, New York courts have enforced no-damages-for-delay clauses against claims for delays of twenty or even thirty-two months, including in the context of construction projects similar in scope to the Bayonne Bridge project here. *See, e.g., Comm. Elec. Contractors, Inc. v. Pavarini Constr. Co.*, 856 N.Y.S.2d 46, 47 (1st Dep't 2008) (enforcing no-damages-for-delay clause and granting summary judgment against claim premised on delay of twenty months in construction of museum); *Dart Mech. Corp. v. City of New York*, 891 N.Y.S.2d 76, 77 (2009) (same for delay of thirty-two months in project to build annex for sanitation department). Though NASDI cites to one decision that denied summary judgment on a claim premised on a two-and-a-half-year delay, that case involved a longer delay and behavior far more suspect than that at issue

---

4 start date of "July 27, 2015"); *see also id.* at 51 (depicting the original schedule in NASDI's subcontract).

here. *See Bovis Lend Lease LMB v. GCT Venture*, 775 N.Y.S.2d 259, 260 (1st Dep't 2004) ("[A]ppellants allegedly allowed tenant-requested design changes to continue unabated, thereby increasing the scope of the subcontractor's work and preventing completion in a timely fashion."). NASDI argues that several documents establish a genuine dispute as to the foreseeability of the delays, but those documents were either not timely presented to the district court or make obvious and generic points that construction had been delayed, which is not in dispute.

*Second*, NASDI argues that the no-damages-for-delay clause was unenforceable because the delays here were "so unreasonable that they constitute[d] an intentional abandonment of the [sub]contract" by SKK. *Corinno*, 67 N.Y.2d at 309. Again, we disagree. As already discussed, the length of the delays alone was insufficient to make them "unreasonable," given that New York courts have upheld no-damages-for-delay clauses against delays of greater length in similar contexts. And while NASDI makes much of a five-page letter by a demolition professional, who opined that the changes and delays to NASDI's work "amount[ed] to a cardinal change [*i.e.,* abandonment] as recognized by the industry," App'x at 1776, the letter was unsworn and its author stated in his

7

deposition that he did not "claim to be an expert in anything," Dist. Ct. Doc. No. 80-1 at 2; *see also Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("[U]nsworn letters . . . generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment."). Furthermore, the letter failed to support its baseline conclusion – that there was a "cardinal change as recognized in the industry" – with any analysis explaining industry expectations or how the bridge project might have run afoul of them. App'x at 1776; *see Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

## II.    Breach of the Covenant of Good Faith and Fair Dealing

NASDI also urges us to revive its claim for breach of the covenant of good faith and fair dealing because there is a genuine dispute as to whether SKK acted in good faith in estimating NASDI's share of the Port Authority settlement over the Stage 4 delays. By NASDI's telling, in June 2016 it submitted a claim to SKK for $7.5 million over the delays, which SKK then forwarded to the Port Authority along with the other subcontractors' claims. At the time, SKK internally estimated NASDI's claim at $5 million, though it adjusted that estimate to $4

8

million a few months later.  However, the Port Authority then informed SKK that it would not review subcontractor claims individually and would instead pay out an unallocated settlement to SKK alone.  That lump settlement triggered the settlement-allocation clause in the subcontract, which directed SKK and NASDI to confer in good faith to determine NASDI's portion of any unallocated settlement from the Port Authority; if no agreement could be reached, then any decision by SKK "in good faith" would be "binding and conclusive."[4]  In light of the Port Authority's refusal to pay out subcontractor claims individually, SKK reportedly did its own "independent review and analysis" of each claim, including NASDI's. App'x at 2659.  Through that review, SKK re-estimated the value of NASDI's claim at only $602,526, and informed NASDI of the revised figure in a letter dated February 1, 2017.[5]

---

[4] Section 7.2.5 of the subcontract provides that "[in]  the event of a recovery or settlement from [the Port Authority] which does not expressly allocate an amount to or for [NASDI's] Claim, the parties shall endeavor to agree upon such allocation in good faith; if they are unable to so agree, the allocation of such recovery expenses and costs made by [SKK] in good faith shall be binding and conclusive upon [NASDI]."  App'x at 40.

[5] The February 2017 letter also factored in all of NASDI's outstanding claims and credits (including a credit of approximately $819,747 to reflect that NASDI no longer had to perform certain demolition tasks) and determined that, on balance, NASDI owed SKK approximately $733,000.  NASDI does not argue on appeal that those credits were applied in error.

We agree with the district court that NASDI failed to identify a genuine dispute as to whether SKK handled NASDI's claim in good faith. SKK provided a full account of its "independent review" in its February 2017 letter, including a point-by-point rejection of NASDI's claim for $7.5 million. *Id.* NASDI points to no evidence suggesting that SKK's calculations were incorrect or dishonest. Instead, NASDI conclusorily asserts that SKK's figures must have been provided in bad faith because SKK "claims to have spent $45.89 million completing NASDI's scope of work" in Stage 4. NASDI Br. at 36. Without more, we cannot say that NASDI has established a genuine dispute of fact concerning SKK's lack of good faith in estimating NASDI's share of the Port Authority settlement. We therefore affirm the district court's grant of summary judgment on this ground.

\* \* \*

We have considered NASDI's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10