COLEMAN BROS. CORPORATION *vs.* COMMONWEALTH.

Suffolk.    May 6, 1940. — November 1, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, & COX, JJ.

*Contract,* Construction, Building contract, Waiver, Modification, Performance and breach. *Res Judicata. Practice, Civil,* Auditor: findings. *Words,* "Pier," "Cofferdam."

A contract with the Commonwealth for the construction of a bridge, construed in the light of facts found by an auditor whose findings were final, meant that a lump sum price set for certain cofferdams to be constructed around piers was for cofferdams around entire piers although by the method of construction, adopted in order to satisfy a provision of the contract that the bridge "be built in two sections and so constructed that traffic will be maintained at all times," half a pier was built at a time by the use of a cofferdam around that half only.

Under a contract with the Commonwealth calling for the placing on a bridge of "Boston pattern fence," which was described by an auditor, whose findings were final, as consisting in part of a horizontal pipe at the top, entering but not passing through granite posts, and a continuous taut steel cable passing through the pipe and entirely through the granite posts, a measurement of the fence for computing the price therefor at a certain sum per lineal foot should exclude the length of the cable where it passed entirely through the granite posts.

Upon findings by an auditor, whose findings of fact were final, that, although an engineer, upon whom rested under a contract with the Commonwealth the responsibility of determining whether certain piles to be used in building a bridge met the specifications, agreed that inspection of the piles by a third person might be made at the point of origin in another State, the Commonwealth did not thereby waive its right to reject at the bridge site certain piles not conforming to the specifications although they had been inspected and approved in accordance with the engineer's agreement; no modification of the contract was established; and the contractor was not entitled to damages due to rejection of such piles at the bridge site.

Under the provisions of a construction contract with the Commonwealth, in substance that the contractor should have no claim for damages on account of delays by the Commonwealth in connection with the work and that he should receive the prices set forth in the contract as full compensation for everything furnished and done thereunder, for all risks connected with the work and for all expenses incurred through suspension or discontinuance of the work as specified in the contract, the contractor was not entitled to damages for delay by the represent-

atives of the Commonwealth which was unnecessary and in unreasonable disregard of harm to him therefrom but was not "arbitrary, capricious or wanton."

Findings by an auditor, to whom were referred certain claims by a contractor under a contract with the Commonwealth and whose findings were to be final, when introduced in evidence before a second auditor, to whom were referred other claims under the same contract, were not binding upon the second auditor as to the claims submitted to him.

PETITION, filed in the Superior Court on March 19, 1937, and afterwards amended.

The case was heard by *Collins*, J.

*S. C. Brackett*, for the petitioner.

*E. O. Proctor*, Assistant Attorney General, for the Commonwealth.

DOLAN, J. This is a petition brought under G. L. (Ter. Ed.) c. 258, § 1, in which the petitioner seeks to recover amounts claimed to be due for work performed, and for damages occasioned by delay in connection with a contract entered into between the petitioner and the Commonwealth, acting by its metropolitan district commission, for the construction of the Wellington Bridge across the Mystic River, between the cities of Somerville and Medford. The claims of the petitioner are three, each of which is subdivided into several items. The first and second claims, in which recovery is sought for work performed, were referred to an auditor whose findings of fact were agreed to be final; and, subsequently, the third class of claims, for damages for delay alleged to have been caused by the respondent, was referred to another auditor, whose findings of fact were not agreed to be final. See G. L. (Ter. Ed.) c. 258, § 2; *Arthur A. Johnson Corp.* v. *Commonwealth*, 306 Mass. 347, 349.

The case was heard by the judge upon the auditors' reports only. The judge found for the petitioner on claims one and two in the amount of $11,460.21, and for the respondent on claim three, and filed the following "Rulings on Petitioner's Requests"; "On the first and second claims the findings of fact by the auditor are final. Have made my finding by applying to said facts the law which I believe is applicable. The requests of the petitioner which are in-

consistent with this finding are denied.[1]  On the third claim the findings of fact by the auditor are not final.  No additional evidence, however, was offered.  On the facts found by the auditor and the reasonable inferences therefrom I rule that the delay was not due to the arbitrary, capricious or wanton conduct of the respondent, its agent or agents.  [We treat this as a finding.]  In so far as the requests under the third claim are inconsistent with this ruling they are denied."  The petitioner properly saved its exceptions to the rulings and refusals to rule on its requests, as above set forth, and thereafter duly claimed an appeal from the decision of the judge and filed a bill of exceptions relating to the rulings on its third claim.  Thereafter, on December 21, 1939, the respondent filed an offer of judgment (G. L. [Ter. Ed.] c. 258, § 2) for the sum of $11,460.21.  Subsequently the parties entered into a stipulation that the petitioner is entitled to recover $11,460.21 and costs, and that the only controversy existing between them is whether, in addition to that sum, the petitioner is entitled to recover $22,000 for cofferdams under item one of its first claim, $615.55 for "Boston Pattern Fence" under item five of its first claim, $1,234.70 for "extra pile costs" under item seven of its second claim, and for damages for delays under its third claim.  The judge then reported the case to this court "for the determination of all questions of law open to the petitioner on . . . [the] record."

We first consider claims one and two.  Since the findings of fact of the auditor constituted a case stated, the petitioner's appeal from the order of the judge, that judgment be entered for the petitioner in the sum of $11,460.21, brings before us all questions of law raised by the case stated and involved in the decision.  *Pesce* v. *Brecher*, 302 Mass. 211, 212, and cases cited.  *Nutter* v. *Mroczka*, 303 Mass. 343, 347.  G. L. (Ter. Ed.) c. 231, § 96.  *Yoffa* v. *Shaw*, 299 Mass. 516, 517.

---

[1] It does not appear in the record that any requests for rulings were made by the petitioner as to claims one and two.  Since the auditor's report as to those claims constituted a case stated, such requests would be of no consequence.  *Antoun* v. *Commonwealth*, 303 Mass. 80.

Claim one. Item one. The claim for a balance of $22,000 alleged to be due on cofferdams.

The contract provided that "The bridge is to be built in two sections and so constructed that traffic will be maintained at all times." The plan adopted was to tear down and remove the downstream sidewalk and about five feet in width of the downstream roadway and then to build the downstream half of the new bridge. When that was done and open for traffic, the rest of the old bridge was torn down and replaced by new construction which constituted the upstream half of the new bridge. Embankments and abutments were thrust out from both sides of the river toward the center of the river. Between the abutments the bridge was to be supported by thirteen granite piers set in the bed of the river. The building of these piers required the construction of cofferdams to keep the water out while the workmen were excavating, driving piles, pouring the concrete footings for the piers, and erecting the piers themselves.

The thirteen granite piers were given numbers by the parties; number one being the first out from the abutment at the Somerville end of the bridge, and number thirteen being nearest to the abutment at the Medford end. The draw hinged on pier seven. There is no claim as to piers seven and eight. The petitioner has been paid for eleven other cofferdams, but contends that, since it built one cofferdam around the downstream half of each of the eleven piers, and after the upstream half of the old bridge was removed, it built eleven more — one around each upstream half of the eleven piers — it should be paid in addition for the latter. The respondent contends that the contract called for but eleven complete cofferdams, in addition to those required for the construction of piers seven and eight.

The subject of cofferdams is referred to in several places in the contract. Item 22 of the contract is as follows: "Cofferdam for pier 7, complete in place, the lump sum of $12,000." Item 23 (cofferdam for pier eight) is identical in its terms with item 22 except for price. Item 24 reads: "Cofferdams for piers 5, 6, 9 and 10, complete in place, the

sum of $2,000.00 each"; under the heading "Approximate Quantities" appears the figure "4," and under the heading "Computed Totals" appear the figures "8,000.00." Provisions for the cofferdams for piers seven and eight (not in controversy but of assistance in construing the contract) are in part that "The cofferdam for the draw pier is to be built in such a manner as to allow one half of the draw pier to be built at a time and all cofferdam work required to complete the entire draw pier built in sections shall be considered as one cofferdam. . . . *Basis of payment.* The amount of work done under this item will be paid for by a lump sum for each cofferdam, complete in place . . . ." Pertinent provisions of the contract applying to cofferdams for the other piers are these: "On piers numbered 5, 6, 9 and 10, as designated on the plans, or on other piers as the engineer may direct, wood sheeting cofferdams are to be built to the established lines and grades." The auditor found that the engineer directed that piers one, two, three, four, eleven, twelve and thirteen be encased in cofferdams in accordance with this part of the contract. The question raised as to this item of claim one is what the words "pier" and "cofferdams" as used in the contract mean.

A reading of item 24 set forth above would seem to make it clear that there was to be but one cofferdam for each pier. The petitioner does not contend that the word "pier" as used in item 24 means half piers such as were constructed at the downstream end of the bridge and then completed in the construction of the other half of the bridge. But even if it be assumed in favor of the petitioner that portions of the contract dealing with the erection of cofferdams are ambiguous, it cannot prevail.

Where there is an ambiguous term in a contract parol evidence is admissible to explain the meaning intended by the parties. *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 482, 483, and cases cited. In such case the construction placed upon it by the parties is entitled to weight, in determining the proper interpretation of the instrument, *Anderson* v. *Sopp,* 295 Mass. 97, 102, and it is for the fact finding tribunal to determine the meaning that the parties attached

to the ambiguous terms, or the construction that the parties gave it by their action. *Bascom* v. *Smith*, 164 Mass. 61, 76. *Derby Desk Co.* v. *Conners Brothers Construction Co.* 204 Mass. 461, 470. When these facts are found the construction of the contract is still a matter of law for the judge. *Arcade Malleable Iron Co.* v. *Jenks*, 229 Mass. 95, 100. *Rizzo* v. *Cunningham*, 303 Mass. 16, 20, 21.

In the present case the auditor found that the word "pier" in the contract meant a granite structure running from one side of the new bridge to its other side, and that both parties so understood until about April 8, 1935 (the contract was executed May 3, 1934), when the petitioner took the position that a "pier" was what the auditor found to be a "half-pier." The auditor also found that the word "cofferdam" as used in the contract meant a continuous cofferdam surrounding each whole pier, and that the structure surrounding but half a pier was not such a cofferdam as was provided for in the contract. If we accept these meanings of the terms in dispute any ambiguity in the contract as to the meaning of the word "cofferdam" as used in the contract is resolved. Construing the contract in the light of the auditor's findings, we are of opinion that the contract contemplated only eleven complete cofferdams (excluding those relating to piers seven and eight) to be paid for at the rate of $2,000 each. Since the petitioner has been paid the sum due therefor, it follows that there was no error in the action of the judge in ordering judgment for the respondent as to this item.

Claim one. Item five. Claim for additional payment of $615.55 on "Boston Pattern Fence."

The contract provided that Boston pattern fencing "shall be furnished and erected on the sidewalks of the bridge and portals." The auditor found that Boston pattern fence is a standardized type of metal fencing commonly used on bridges. It consists of a top longitudinal member which is a three inch pipe, a corresponding bottom member, vertical metal posts at intervals, and between the posts solid steel rods fastened to the upper and lower railings. The contract further provided that a three-quarter inch

galvanized steel cable be placed inside the top railing and that this "steel cable in the top rail shall be secured in the posts at the ends, passing through holes in the intermediate posts, and shall be provided with an approved device at each end to enable it to be drawn up reasonably taut." The basis for payment therefor is as follows: "The Boston pattern fence will be paid for at the contract unit price therefor [which was $6.50 per lineal foot], complete in place, which price shall include the drilling of the holes in the coping and all materials (including cable) and all labor and work incidental thereto." Along both sides of the new bridge were granite posts. The contract also provided that the top and bottom rails of the fence extend at least two inches into holes drilled in the granite posts for their reception. The steel cable running through the top rail of the fence extended all the way through certain of these posts. The petitioner contends that the measurement of the lineal footage of the fence should include that part of the cable passing through the granite posts. The respondent contends that the measurement should stop at the point where the top rails come to an end in the granite posts. The auditor found that the use of a steel cable through the upper rails and through certain of the granite posts was unusual, and that the purpose of the use of the cable was to prevent motor vehicles from plunging into the river by furnishing the additional restraint of a continuous steel cable reinforcing several contiguous sections of the fence "and securely fastened at its ends inside two granite posts." We think that it cannot be said that the part of the cable passing through the granite posts after leaving the steel pipe constitutes Boston pattern fence within the meaning of that description as found by the auditor. The footage in dispute may be in a sense a fence, but it does not constitute Boston pattern fence. The contract provided only for payment per lineal foot of Boston pattern fence, including the cable. Since the petitioner has been paid at the rate fixed by the contract, the action of the judge in ordering judgment for the respondent on this item was not erroneous.

Claim two.  Item seven.  "Extra pile costs due to rejection on job of material approved by inspection agent."

The dispute as to this item arose over certain oak piles which were to be driven for the fender and guard piers and for the foundation of the drawtender's house.  The contract provided that the piles "be of oak sound and straight and free from all defects that will in the opinion of the engineer impair their strength or usefulness for the purpose intended." Certain definite specifications were set forth in the contract for these piles and it was also provided that "Piling shall be subject to inspection and the right is reserved to reject all piles that do not fulfill the requirements."  The auditor found that the petitioner had driven several thousand "spruce" piles for the foundations and that disputes arose with reference to whether all these piles had conformed to the specifications.  The engineer agreed to the petitioner's suggestion that an inspection at the source of supply of the piles would prevent disputes and lessen the expense to the petitioner, and an arrangement was made that a concern should inspect the oak piles in behalf of the respondent at the point of origin in New Jersey.  At the hearing before the auditor the petitioner contended that this arrangement was to be conclusive.  The auditor found, however, that the respondent did not waive any right to reject, at the site of the bridge, any piles that failed to conform to specifications, even though they had been inspected and approved by the concern in New Jersey.  He also found that this concern approved a number of oak piles that did not in fact conform to the specifications.  These piles were rejected by the testing concern at the site of the bridge and by the respondent.  The petitioner drove five of these piles in direct violation of the orders by the respondent's engineer not to use them.  Damages sought by the petitioner as to this item include freight and labor charges on the rejected piles, the cost of certain of them, and the contract price per foot for the piles driven in violation of the engineer's orders, which were subsequently removed.  Upon these findings it seems clear that the petitioner has not established any modification of the terms of the contract,

see *Zlotnick* v. *McNamara*, 301 Mass. 224, 226, and the decision of the respondent's engineer was conclusive. *National Contracting Co.* v. *Commonwealth*, 183 Mass. 89, 91, 92. *Handy* v. *Bliss*, 204 Mass. 513, 520. *Hathaway* v. *Stone*, 215 Mass. 212, 216. There was no error in the disallowance of this item.

Claim three. Items for "Damages for Delay."

With respect to this claim the only question before us is whether the decision of the judge "can be supported in law, or whether as matter of law it must be reversed." *Arthur A. Johnson Corp.* v. *Commonwealth*, 306 Mass. 347, 351, and cases cited.

The items of this claim relate to (A) delay due to proposed redesign of bridge foundations, (B) delay due to failure to complete draw span, and (C) delay due to unnecessary pile tests. It would serve no useful purpose to recite the subsidiary findings of the auditor as to items A and B. An examination of his report does not disclose any subsidiary or specific finding from which an inference may be drawn as to an ultimate or other fact contrary to the finding of the auditor as to that fact. See *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564. The ultimate findings of the auditor as to item A were that the delay of five months in "determining the desirability of redesign of the foundation plans was unnecessary," but that in this matter the respondent was not guilty of "unreasonable, arbitrary, capricious or wanton conduct, or bad faith, in causing suspension of the petitioner's work pending consideration of the redesign of the bridge foundations."

With relation to item B, the auditor's ultimate findings were that the "delay in awarding the contract for the draw span was an unnecessary and unreasonable disregard of serious consequences to the petitioner from such delay, but is not fairly to be termed 'arbitrary,' 'capricious,' or 'wanton.'"

Concerning item C ("Delay Due to Additional And Unnecessary Pile Tests") the auditor found that "The Federal government was paying 30% of the cost of the work and under the so called 'grant agreement' between the

Federal government and the Commonwealth, it was provided as follows: —

"'1. *Construction of the projects.* Upon the signing of this Agreement by the Commonwealth, the Commonwealth will promptly commence or cause to be commenced the construction of the projects listed in Paragraph 1, Part One, hereof, (unless such construction has already been commenced), and will thereafter continue such construction or cause it to be continued to completion with all practicable dispatch, in an efficient and economical manner, at a reasonable cost, and in accordance with the provisions of this Agreement as to the labor to be employed and materials to be used and as to the plans, drawings, specifications and construction contracts which, except for subcontracts, shall be in form satisfactory to the Government and in accordance with such engineering supervision and inspection as the Government or its representatives may require. Except with the prior written consent of the Government, no materials or equipment for any such projects shall be purchased by the Commonwealth subject to any chattel mortgage or any conditional sale or title retention agreement.' . . . Under all the circumstances, I find that it was reasonable and proper for the commission's engineer to submit to the judgment of the P. W. A. engineer in requiring these extra tests as part of the 'engineering supervision or inspection' as the Federal government might require." The auditor's ultimate findings as to this subject were that, if the question of fact was open for determination by him, on the evidence before him the commission's engineer did not act in bad faith, arbitrarily or capriciously in acceding to the demands of the "P. W. A." engineer that these additional pile tests be made.

In connection with the petitioner's claims for extras under item sixteen of claim two, for extra costs to the petitioner due to the pile tests for which it seeks damages under claim three for delay, the first auditor found that, though convinced at all times that the tests were unnecessary, the respondent's engineer surrendered his judgment to that of the "P. W. A." engineer who insisted that the tests be

made, and that the respondent's engineer acted in bad faith and arbitrarily and capriciously in the matter, with serious consequences to the petitioner. The first auditor allowed the extra cost to the petitioner under claim two. These findings of the first auditor were received in evidence by the second auditor.

The petitioner contends that these findings of the first auditor (which were final) are binding upon the respondent and decisive of the item of claim for delays under discussion. The contention cannot be sustained. The report of the first auditor is evidence only of the matters submitted to him (G. L. [Ter. Ed.] c. 221, § 56), and claim three for delays was not submitted to him. *Flint* v. *Hubbard*, 1 Allen, 252, 254, 255. His findings, just discussed, are not *res judicata* as to the matters submitted to the second auditor. *Kyle* v. *Reynolds*, 211 Mass. 110, 112. In any event the subsidiary facts found by the first auditor, read in the light of the provisions of "the Grant Agreement," would warrant the judge in inferring that the delay was not due to bad faith or arbitrary, capricious or fraudulent conduct on the part of the respondent. *Dome Realty Co.* v. *Gould*, 285 Mass. 294. *Savin* v. *Block*, 297 Mass. 487.

The contract between the petitioner and the respondent contains the following clause: "Article XI. No Damages for Delay. The Commission may delay the commencement of the work, or any part thereof, if the Commission shall deem it for the interest of the Commonwealth so to do. The Contractor shall have no claim for damages on account of such delay, but shall be entitled to so much additional time in which to complete the whole or any portion of the work required under this contract as the Engineer shall certify in writing to be just. The Contractor shall have no claim for damages on account of any delay on the part of the Commission in performing or furnishing any work or materials to be performed or furnished by the Commission in connection with the execution of the work covered by this contract. The Contractor shall have no claims for damages on account of any delays caused by the work of other contractors of the Commission now or here-

after doing work upon the premises covered by this contract." Article XXIII of the contract provides, in part, that the contractor shall receive as full compensation, for everything furnished and done under the contract, for all risks of every description connected with the work, for all expenses incurred by or in consequence of the suspension or discontinuance of the work as therein specified, for well and faithfully performing the work and the whole thereof as therein provided, such unit "and/or" lump sum prices as are set forth therein, which shall include "all . . . incidental work and expense unless otherwise specified." The effect of similar articles was before this court in *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495. It was held in that case that they were valid, and that their effect was to exculpate the Commonwealth from all claims due to delay, even though the action of the Commonwealth in delaying the work was negligent, unreasonable or due to indecision. At page 503 the court said: "The respondent or the officials in charge of the work are not charged with arbitrary, capricious or fraudulent action, nor with acting in bad faith or under such gross mistake as to be tantamount to fraud." If it be assumed that recovery could be had in the present case for delays occasioned by such conduct on the part of the respondent, nevertheless, since the auditor has found that in fact the delays complained of were not due to any such conduct on the part of the respondent, and these ultimate or general findings are consistent with the other facts found by him, the judge was warranted in finding for the respondent on the claim for delays. See *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, and cases cited.

There was no error and the petitioner's exceptions are overruled. Since the petitioner recovers no more than the amount of the offer of judgment, in accordance therewith decision is to be entered for the petitioner in the sum of $11,460.21 together with costs up to the date of the filing of the offer of judgment, and the Commonwealth is to have costs from that date.

*So ordered.*