577 A.2d 363

**STATE HIGHWAY ADMINISTRATION**

v.

**GREINER ENGINEERING SCIENCES, INC.**

**No. 1677, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

July 3, 1990.

Joseph P. Gill, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Douglas G. Worrall (Deborah K. Sobieski and Smith, Somerville & Case, on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and BISHOP, JJ.

BISHOP, Judge.

Greiner Engineering Sciences, Inc., appellee, made a claim against the State Highway Administration (SHA), appellant, for $148,859.80 in delay damages incurred during preparation of construction contract documents for a highway project. Upon denial of its claim, appellee appealed to the Maryland State Board of Contract Appeals [1] (BCA)

---

1. Pursuant to a Disputes Clause within the contract, the resolution of disputes is to be handled by the Maryland Department of Transportation Board of Contract Appeals (DOTBCA). Pursuant to Section 25 of Chapter 775, Acts of 1980, the Maryland State Board of Contract Appeals succeeded the DOTBCA and, therefore, had jurisdiction over the dispute. *See Maryland Port Administration v. C.J. Langenfelder &*

which, following a *de novo* hearing, issued a written decision awarding appellee $111,644.00. The Circuit Court for Baltimore County (Turnbull, J.) affirmed the BCA decision.

## ISSUES

Appellant asks this Court:

I. Whether the BCA erred by rewriting the contract to create an exception to the "no damages for delay" clause for delays not contemplated by the parties;

II. Whether the BCA finding that the delay was not contemplated by the parties, based solely upon the testimony of a witness who was not employed by SHA at the time the contract was executed, was supported by competent, material and substantial evidence;

III. Whether enforcement of the "no damages for delay" clause was unconscionable;

IV. Whether SHA was estopped from relying on the not-to-exceed clause in its contract with appellee;

V. Whether appellee's acceptance of extra work orders totalling $480,843.00 without reserving the right to file a later claim bars such later claim as a matter of law; and

VI. Whether appellee presented legally sufficient proof of damages where the BCA (1) retrospectively qualified as experts three witnesses who gave lay testimony; (2) accepted without analysis appellee's highly disfavored "total cost" proof of damages; and (3) arbitrarily reduced appellee's claim by twenty-five percent (25%) rather than dismiss the entire claim.

We address only the first and third issues in this opinion.[2]

---

*Son, Inc.*, 50 Md.App. 525, 539 n. 9, 438 A.2d 1374 (1982); *Kasmer Electrical Contracting, Inc. v. State Highway Admin.*, MSBCA 1065; 1 MSBCA ¶ 33 at 7 n. 9 (1983).

**2.** Our disposition of these issues renders any analysis of the remaining issues *obiter dicta;* therefore, such analysis will not be undertaken.

FACTS

The findings of fact made by the BCA are not challenged by appellant and consist of the following:

1.  On October 5, 1979, appellee entered into a contract (agreement) with SHA to perform final design services for a 3.86 mile portion of U.S. Route 48, east of Orelands Road to west of Bottenfield Road, in Allegany and Washington Counties, Maryland.

2.  The scope of services to be provided by appellee was divided into two phases, Phase IV and Phase V. Phase IV included all engineering services required to complete final design including bridge structures and to prepare construction contract plans, specifications and documents for bid advertisement. Phase V involved all work from advertisement of the project to opening of traffic, including review of shop drawings and any redesign during construction.

3.  The basis of payment for Phase IV services is stated as "cost plus fixed fee" with various amounts payable for specific items and an overall maximum amount payable. The Phase IV payment section specifies:

> The maximum amount payable to the Consultant under this Agreement, for all Phase IV services performed ... may not exceed Four Hundred Twenty Four Thousand and Two Hundred Sixty Nine Dollars ($424,269) without the express written approval of the Highway Administration.

4.  For Phase V services, the Agreement sets forth similar payment limitations and states that the "maximum amount payable" to appellee for the checking of all shop and working drawings "may not exceed Twenty Five Thousand Nine Hundred Twenty Dollars ($25,920) without the express written approval of the Highway Administration" and for all redesign under construction services "may not exceed Three Thousand Nine Hundred Thirty Dollars ($3,930), except where extra or additional work has been properly authorized by the Highway Administra-

tion." The maximum amount payable for all Phase V services totalled $29,850.

5. The basis of payment section of the Agreement concludes with a paragraph entitled "Total Payment":

The total maximum amount payable to the Consultant for all services provided under this Agreement, may not exceed Four Hundred Fifty Four Thousand One Hundred Nineteen Dollars ($454,119) except where extra or additional work has been properly authorized by the Highway Administration.

The Agreement also contained a "no-damages-for-delay" clause providing:

The Consultant agrees to prosecute the work continuously and diligently and no charges or claims for damages shall be made by him for any delays or hindrances, from any cause whatsoever during the progress of any portion of the services specified in this Agreement. Such delays or hindrances, if any, may be compensated for by an extension of time for such reasonable period as the Department may decide. Time extensions will be granted only for excusable delays such as delays beyond the control and without the fault or negligence of the consultant.

(General Conditions at 2.).

6. The expected duration of Phase IV work was 15 months from the Notice to Proceed, with completion anticipated by March 1981. However, as discussed below, the work at issue (principally Phase IV) was not completed until sometime in the latter half of 1986.

7. An "initiation" meeting for the project was held on December 7, 1979. At this meeting and shortly afterwards, SHA directed appellee to conduct various studies relating to changes in the scope of the original design work for the related construction project, including re-evaluating the horizontal and vertical alignment of the highway, bifurcating part of the roadway and restudying the High German Road alignment because of an adjacent property owner's objections. Following the Preliminary

Investigation on July 22 and 23, 1980, SHA directed appellee to prepare a detour road for the Sideling Hill Creek Structure. In addition, appellee was directed to restudy the Old National Pike profile.

8. In December, 1980, SHA directed appellee to make estimates of cut and fill quantities and to change the roadway median width from 58 to 34 feet.

9. On January 13, 1981, SHA directed appellee to stop work on the project except for the detour road plan because SHA was experiencing funding uncertainties and was in the process of assessing its options. Appellee resumed contract work at SHA's direction on January 30, 1981. On March 10, 1981, SHA directed appellee to undertake cost reduction studies. As a result of these studies SHA decided to segment construction of the project into two distinct contracts with appellee providing design services and preparation of contract documents for both.

10. On January 5, 1982, SHA directed appellee to stop work on everything except the right-of-way plats. This stoppage lasted until September 9, 1982.

11. Subsequently, SHA (again because of funding problems) directed appellee to prepare plans for another construction contract; a contract under which the highway would be designed for limited access. The limited access contract plans were completed in January, 1986; appellee ultimately providing design services for three contracts.

12. From January 17, 1981 to July 10, 1986, SHA issued five Extra Work Orders (EWOs) to compensate appellee for the extra work performed as partially described above. Appellee developed the man-hours used or estimated to be used for the extra work, negotiated those hours with SHA and signed the EWOs. The EWOs issued to appellee totalled $480,843.

13. On March 14, 1985, appellee submitted a claim to SHA for costs over and above the original contract and EWOs due to "an inordinate number of short term and

long term interruptions to the normal progress of work and other time consuming features resulting from SHA direction or decisions."

14. By January 21, 1987, the parties had negotiated most of the individual items set forth in the initial March 14, 1985 submission. The only claims remaining as of January 21, 1987 were for "Additional Drawings and Additional Effort Per Drawing".

15. Appellee calculated the additional drawings claim by subtracting the number of contract drawings it estimated (146) from the number of contract drawings it provided (255) and multiplying this by an estimated number of man-hours per drawing. This resulted in a total of 5,529 hours and a claim of $131,128.

16. By letter dated June 9, 1987, from the Chief, Bureau of Highway Design, SHA denied appellee's claim because the man-hour overrun based on contract drawings was "not identifiable as being the result of additional and/or extra work tasks."

17. On June 22, 1987, appellee appealed the decision to deny its claim to the SHA Administrator.

18. By letter dated August 13, 1987, the SHA Administrator rejected appellee's request for compensation based on additional drawing efforts. However, the Administrator's letter indicated that SHA would consider a request for compensation based on documented, auditable accounting information identifying specific tasks relating to extra work efforts.

19. Appellee submitted its final claim on September 8, 1987 in the amount of $167,000. The final claim departed from the contract drawings overrun approach and was based on the difference between the total man-hours assigned to the original contract work and approved EWOs identifying specific tasks and the total man-hours actually expended on the project through May 29, 1986. This differential resulted in a total alleged overrun of 6,578 man-hours. Appellee claimed the entire hourly overrun resulted from adverse impact on productivity

attributable to "man-hours involved in the interruptions to the normal process of preparing the contract documents and also the extensive administration". Appellee presented its claim on a "total cost" basis because due to the alleged numerous interruptions over a long period of time "an estimate for each interruption is very difficult with our retrieval system".

20. On November 30, 1987, SHA issued a final decision denying appellee's claim and appellee filed an appeal with this Board on December 28, 1987.

21. Appellee, pursuant to the Board's Order on Proof of Costs, submitted reduced costs of $151,938.31. Both parties agree that appellee's books and records reflect an actual adjusted claim figure of $148,859.80. While SHA does not dispute that appellee's books and records reflect that appellee absorbed such costs on the project, it objects to appellee's entitlement thereto on various legal grounds.

The Board held that (1) the no-damages-for-delay clause was not intended by SHA to deny appellee reimbursement for such unforeseeable delay; (2) it would be unconscionable to permit SHA to rely on the no-damages-for-delay clause to deny appellee reimbursement; (3) the not-to-exceed clause was not intended to preclude loss of efficiency damages and SHA is estopped from relying on it as a defense; (4) inefficiency damages were adequately established through the testimony of appellee's witnesses; (5) appellee was entitled to an equitable adjustment.

Appellant appealed the BCA decision to the Circuit Court for Baltimore County. The court found that the literal language of the no-damage-for-delay clause bars appellee's claim, however, the BCA correctly adopted "the better, more modern view" that the "not within the contemplation of the parties" exception applies. The court then found that there was substantial evidence in the record to support the BCA's conclusions.

## DISCUSSION

### I. *The Clause*

▩ Both parties agree that the central issue in this case is whether appellee's claim for damages is precluded by the following general condition provided in the pertinent contract:

DELAYS AND EXTENSIONS OF TIME [3]

The Consultant agrees to prosecute the work continuously and diligently and no charges or claims for damages shall be made by him for any delays or hindrances, from any cause whatsoever during the progress of any portion of the services specified in this Agreement. Such delays or hindrances, if any, may be compensated for by an extension of time for such reasonable period as the Department may decide. Time extensions will be granted only for excusable delays such as delays beyond the control and without the fault or negligence of the Consultant.

Appellant contends that the court and the BCA erroneously applied an exception to the objective law of contract interpretation requiring enforcement of the unambiguous no-damages-for-delay clauses. Appellant provides ample authority to support its position that a no-damages-for-delay clause may not be excepted even when an uncontemplated delay in performance of the contract results. In support of such position appellant argues that *Christhilf v. Mayor and City Council of Baltimore*, 152 Md. 204, 136 A. 527

---

3. A comparable clause is mandated for all State contracts with the exception of construction and purchase orders:
   **.13 Delays and Extensions of Time.**
   Mandatory provision for all contracts. It shall be in substantially the same form as follows:
   "Delays and Extensions of Time"
   "The Contractor agrees to prosecute the work continuously and diligently and no charges or claims for damages shall be made by it for any delays or hindrances from any cause whatsoever during the progress of any portion of the work specified in this Contract...."
   Md.Regs.Code title 21.07.01.13.

(1927) is dispositive and cites numerous authorities from our sister states.

Finally, appellant posits that the "contemplation of the parties" notion is at odds with a system of competition for public contracts, will promote chicanery, and will cause each governmental agency that uses a no-damages-for-delay clause to act at its own peril for failing to explore with each contract bidder all the delays that are contemplated.

■ Appellee responds that *Christhilf v. Mayor and City Council, supra,* supports application of the exception for delays not contemplated by the parties. In addition, appellee cites numerous opinions from other jurisdictions that recognize exceptions to no-damage-for-delay contract clauses. Therefore, appellee contends that the record clearly supports the BCA finding that the instant delay was not contemplated by the parties and the damage award was appropriate.[4]

It is well settled law that "the order of an administrative agency must be upheld on judicial review if it is not based on an error of law, and if the agency's conclusions reasonably may be based upon the facts proven." *People's Counsel v. Maryland Marine,* 316 Md. 491, 496–97, 560 A.2d 32 (1989). "But a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." *Id.* The issue of whether Maryland recognizes an exception to the enforcement of no-damage-for-delay clauses is purely a legal question and we are under no constraints in conducting our review.

---

**4.** In oral argument appellee argued that its damages were not barred by the no-damages-for-delay clause because they were impact damages, not delay or hindrance damages. The BCA, however, concluded that the damages were hindrance damages. We may not substitute our assessment of the facts for that made by the agency, and by doing so, reject the agency's finding on this issue. *General Motors Corp. v. Bark,* 79 Md.App. 68, 71–73, 555 A.2d 542 (1989); *Commissioner, Baltimore City Police Dept. v. Cason,* 34 Md.App. 487, 508, 368 A.2d 1067 (1977). This conclusion by BCA is supported by its factual findings which are supported by the record and we will not disturb it.

The parties' positions represent the dichotomy of case law on the subject. We will refer to appellee's position as the "New York approach" and appellant's position as the "literal enforcement approach." Each will be analyzed separately.

## A. The New York Approach

The BCA based its decision to award damages on an exception articulated in *Corinno Civetta Construction Corp. v. City of New York*, 67 N.Y.2d 297, 502 N.Y.S.2d 681, 493 N.E.2d 905 (1986). *Corinno Civetta* consisted of the consolidated appeals by four different contractors, each of whom had their claims for delay damages dismissed on the basis of an exculpatory clause contained in the contracts. All four contractors argued that the exculpatory clause does not apply to uncontemplated delays. The City responded that under the broad exculpatory clause contained in the contracts, all claims for delay damages are barred unless deliberate and intentional misconduct is established. The Court of Appeals concluded that:

> A clause which exculpates a contractee from liability to a contractor for damages resulting from delays in the performance of the latter's work is valid and enforceable and is not contrary to public policy if the clause and the contract of which it is a part satisfy the requirements for the validity of contracts generally. The rule is not without its exceptions, however, and even exculpatory language which purports to preclude damages for *all* delays resulting from *any* cause whatsoever are not read literally. Generally, even with such a clause, damages may be recovered for (1) delays caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct, (2) uncontemplated delays, (3) delays so unreasonable that they constitute an intentional abandonment of the contract by the contractee, and (4) delays resulting from the contractee's breach of a fundamental obligation of the contract.

*Corinno Civetta, supra* 502 N.Y.S.2d at 685–86, 493 N.E.2d at 909–10 (Citations omitted). Focusing on the exception for uncontemplated delays, the Court explained the rationale as follows:

> The exception is based on the concept of mutual assent. Having agreed to the exculpatory clause when he entered into the contract, it is presumed that the contractor intended to be bound by its terms. It can hardly be presumed, however, that the contractor bargained away his right to bring a claim for damages resulting from delays which the parties did not contemplate at the time.

*Id.*

Appellee also refers this Court to *City of Seattle v. Dyad Construction, Inc.*, 17 Wash.App. 501, 565 P.2d 423 (1977) wherein a contractor entered into a contract with the City which barred the recovery of monetary damages. The "UNAVOIDABLE DELAYS" clause in the contract provided for a time extension when the contractor is delayed by the act, neglect or default of the City. The trial court denied Dyad recovery for the delays and found that the time extensions were its exclusive remedy. The Washington Court of Appeals conducted a lengthy review of the Washington cases construing delay clauses and found the following:

> The decisions have uniformly held that if an extension of time for performance is provided for in the contract as the remedy for delay caused by the owner, the contractor is precluded from recovering damages because the contingency of delay has been foreseen and provided for. However, the tenor of the reported opinions has shown a recognition that extenuating circumstances may exist and an acknowledgement that there are limitations on the rule.... [D]elay clauses are to be strictly construed because of the harsh results that may flow from their enforcement, delays may be so substantial as to be beyond the reasonable contemplation of the parties, and delays may be so large that they devastate the planned cost and time structure upon which the contractor based

his bid.... [T]here is in every construction contract an implied term that the owner will not hinder or delay the contract, and that if the delay caused by the owner brought about new conditions which the contractor should not have been required to have discovered or anticipated, then the contractor is entitled to damages as well as to an extension of time.

*Dyad, supra* 565 P.2d at 432–33.

The Court held that the factual situation in *Dyad* dictated that Dyad be awarded damages as well as an extension of time for performance because the delay was not contemplated by the parties, the delay was unreasonable in duration, and it resulted in part from the active interference of the City with the work of the contractor.

As indicated by appellee, there is no dearth of jurisdictions recognizing the exception for uncontemplated delays. *See E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas,* 551 F.2d 1026, 1029 (5th Cir.1977), *pet. for reh. granted in part and denied in part, pet. for reh. en banc denied,* 559 F.2d 268 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978) (Alabama courts will strictly construe "no damages" clauses but generally enforce them absent delay not contemplated by the parties, delay amounting to an abandonment of the contract, delay caused by bad faith or delay amounting to active interference); *F.D. Rich Co. v. Wilmington Housing Authority,* 392 F.2d 841, 843–44 & n. 10 (3rd Cir.1968) (delay was clearly foreseen by parties and therefore does not fall into the "delays not contemplated by the parties" exception to the "no damages" clause as recognized in Delaware); *John E. Green Plumbing & Heating Co., Inc. v. Turner Const. Co.,* 500 F.Supp. 910, 911 (E.D. Mich.1980) (no-damage-for-delay clause is not an absolute bar to recovery of delay damages that were not within the contemplation of the parties); *Lichter v. Mellon–Stuart Co.,* 196 F.Supp. 149, *aff'd* 305 F.2d 216 (3d Cir.1962) (causes of delay were contemplated by the parties therefore "no damage" clause applies); *Anthony P. Miller, Inc. v. Wilmington Housing Authority,* 165 F.Supp. 275, 281

(D.Del.1958) ("no damage" clause is operative in the absence of recognized exceptions including delay of a kind not contemplated by the parties); *Department of Transportation v. Arapaho Construction, Inc.,* 257 Ga. 269, 357 S.E.2d 593, 594 (1987) (it is well-settled that termination or no-damage clauses will not be applied to delays or their causes not contemplated by the parties); *Blake Const. Co., Inc. v. C.J. Coakley Co., Inc.,* 431 A.2d 569, 578–79 (D.C. App.1981) (courts will generally enforce no-damage-for-delay clauses unless the delay is one not contemplated by the parties); *Owen Const. Co., Inc. v. Iowa State Dept. of Transportation,* 274 N.W.2d 304, 307 (Iowa 1979) (exception to no-damage-for-delay clause for delay not contemplated by parties is applied to clause exculpating the State from liability for damages to one contractor caused by delay of any other contractor); *Grant Const. Co. v. Burns,* 92 Idaho 408, 443 P.2d 1005, 1012 (1968) (where delay results from causes not within the contemplation of the parties or, where delay is caused by active or direct interference by contractee, "no damage" provision of contract need not be adhered to); *Ace Stone, Inc. v. Wayne,* 47 N.J. 431, 221 A.2d 515, 519–520 (1966) (parol evidence is admissible to determine what parties contemplate upon entering into contract with "no damage" clause); *Hawley v. Orange County Flood Control Dist.,* 211 Cal.App.2d 708, 714–17, 27 Cal. Rptr. 478 (1963) (whether delay was contemplated by the parties is issue of fact despite "no damage" provision); *Nix, Inc. v. Columbus,* 111 Ohio App. 133, 171 N.E.2d 197, 204–05 (1959) ("no damage" provision in contract has no application where damages arising from delay were not within the contemplation of the parties at time contract was made).

## B. Literal Enforcement Approach

Appellant asserts that the better reasoned cases enforce no-damage-for-delay clauses despite the occurrence of uncontemplated delays. In *John E. Gregory & Son, Inc. v. A. Guenther & Sons Co.,* 147 Wis.2d 298, 432 N.W.2d 584

(1988) a subcontractor brought an action against Milwaukee County seeking damages for delay in the performance of a construction contract. The trial court had included a question within its special verdict which allowed a jury to find the County liable for delay damages when the cause of the delay was not contemplated by the parties at the time they entered into the contract. The County argued that the no-damage-for-delay clause barred assessment of any such damages. The subcontractor argued that the Court should allow damages caused by an uncontemplated delay based on the doctrine of mutual assent. Recognizing that most states addressing the question have concluded that delay not contemplated by the parties is an exception to the general rule of enforceability of no-damage-for-delay clauses, the Court held:

> [D]elay "not contemplated by the parties" is not an exception to the general rule that "no damage for delay" clauses are enforceable. We conclude that parties can mutually assent to such a clause without contemplating in particularity all of the potential causes of delay. Indeed, the adoption of a "no damage for delay" clause shows that the parties realize that some delays cannot be contemplated at the time of the drafting of the contract. The parties include the clause in the contract in order to resolve problems conclusively should such delays occur. The parties can deal with delays they contemplate by adjusting the start and completion dates or by including particular provisions in the contract. "[I]t is the unforeseen events which occasion the broad language of the clause since foreseeable ones could be readily provided for by specific language." *City of Houston v. R.F. Ball Construction Co., Inc.*, 570 S.W.2d 75, 78 (Tex.Civ.App. 1978). Thus, the doctrine of mutual assent supports our conclusion that delays not contemplated by the parties should not be an exception to the rule that "no damage for delay" clauses should be enforced.

*Gregory, supra*, 432 N.W.2d at 587 (footnote omitted). Additionally, the Court concluded that its holding was neither unfair nor inequitable:

Knowing that unforeseen delays—such as the ones in this case—can occur, parties can bargain accordingly. A subcontractor can protect itself from the risk of unforeseen delay simply by adjusting its bid price in recognition of the potential additional costs or by refusing to accept such a provision in the contract.

*Id.*

*Western Engineers, Inc. v. State Road Commission,* 20 Utah 2d 294, 437 P.2d 216 (1968) is in accord with *Gregory.* In *Western,* a group of consulting engineers brought an action through the State Road Commission for damages for delays caused by the State. Pursuant to the contract, whereby Western was to perform engineering services in connection with a proposed section of highway, performance was to be completed within nine months. The contract was not completed until more than three years had elapsed. The following proviso was included within the contract terms:

The consulting engineer agrees to prosecute the work continuously and diligently, and that no charges or claims for damages will be made by them for any delay or hindrances, of any cause whatsoever, during the progress of any portion of services specified in this agreement. Such delays or hindrances, if any, shall be compensated for by an extension of time for such reasonable periods as the Road Commission may decide.

*Western, supra,* 437 P.2d at 217. The proviso is substantially the same as the first two sentences of the no-damage-for-delay clause in the case *sub judice.* Like appellee, Western argued that the no-damages clause was not applicable because the delay was not contemplated by the parties. The Court disagreed, holding:

The "no damages" provision, broad as it is in scope, is not ambiguous. Delays that could reasonably be foreseen, could have been specifically provided for in the contract. It was for the unforeseen delays that the clause was included to protect the State and compensate the plaintiffs for such delays.

While there may be cases to the contrary, the better reasoned cases hold that, in the instant case, the plaintiffs were not entitled to introduce parol evidence to indicate that the delay was ... not contemplated by the parties at the time contract was executed.

*Id.* (footnotes omitted).

Appellant's view is shared by numerous other jurisdictions. *See M.A. Lombard & Son Co. v. Public Building Commission*, 101 Ill.App.3d 514, 57 Ill.Dec. 209, 428 N.E.2d 889, 892–93 (1981) (no-damage-for-delay clause precludes recovery of delay damages absent proof of misrepresentation or fraud by contractee; it is presumed that parties deliberately inserted clauses with specific objectives in mind); *City of Houston v. R.F. Ball Const. Co., Inc.*, 570 S.W.2d 75, 78 (Tex.Ct.App.1978) (unambiguous "no damage" clause precludes recovery of delay damages and specifically applies to delays not contemplated by the parties); *Coleman Bros. Corp. v. Commonwealth*, 307 Mass. 205, 29 N.E.2d 832 (1940) (no-damage-for-delay clause in contract is enforceable absent a showing of bad faith or fraud on part of contractee).

### C. Maryland Law

This appeal would be easily resolved if there was either a clear Maryland case on point or no Maryland authority at all; then we could pick between the two trends. As it is, there is a topical case which is sufficiently vague that each party has cited it in support of their incongruous positions. *Christhilf v. Mayor and City Council of Baltimore*, 152 Md. 204, 136 A. 527 (1927).

In *Christhilf* the contractor brought an action against the municipality for damages for delay in constructing a highway. The contractor argued that "the circumstances under which they had constructed the highway were by the unreasonable inaction of the appellee rendered materially different from those which the parties had contemplated at the inception of the contract." *Id.* at 206, 136 A. 527. The contract contained a no-damages-for-delay clause. The

Court held it was reasonable to include in the contract a provision insulating the municipality from liability for delays. The four corners of the contract indicated that the delay complained of was indeed contemplated and the language was clear; the municipality was relieved from liability for delay damages. *Id.* at 208, 136 A. 527.

*Christhilf* contained elements of both trends in construing delay damage provisions. The Court discussed the question of whether the parties contemplated the delay yet "the clear language of the contract" was enforced. We hold, however, that *Christhilf* is consistent with those cases cited by appellant in which the courts found the lack of ambiguity in the contract precluded an inquiry into the parties' initial contemplation. In *Christhilf* the Court never conducted a factual inquiry into what the parties considered. Instead, the Court looked at the contract, found no ambiguity and held that the parties intended what the contract provided.

Our holding is in accord with the objective law of contracts as applied in *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 492 A.2d 1306 (1985). In *General Motors* the Court described the objective law of contract interpretation and construction as follows:

A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away [sic] to what the parties thought that the agreement meant or intended it to mean. As a result, when the contractual language is clear and unambiguous,

and in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract.

*Id.* at 261–62, 492 A.2d 1306 (citation omitted). The funding structure of public agencies necessitates inclusion of such clauses in public contracts.

Stipulations like the ["no damages for delay" clause] are obviously conceived in the public interest in *protecting public agencies contracting for large improvements on the basis of fixed appropriations or loan commitments* against the vexatious litigation based on claims, real or fancied, that the agency has been responsible for unreasonable delays....

*Anthony P. Miller, Inc. v. Wilmington Housing Authority, supra* 165 F.Supp. at 281 (emphasis supplied). Appellee acknowledged that it knew of the funding pressures under which appellant operated. The clause fulfilled its policy objective.

We apply the above principles to the case *sub judice* and hold that the "Delays and Extensions of Time" clause in the contract clearly and unambiguously precludes recovery of delay damages by the appellee. The "not contemplated by the parties" exception is not recognized by the courts of this State. This is not to say that unambiguous no-damage-for-delay clauses will be enforced in every case. The better reasoned approach does not enforce the exculpatory clause where there is "intentional wrongdoing or gross negligence," *Gregory & Son, Inc. v. Guenther & Sons, supra* 432 N.W.2d at 586, "fraud or misrepresentation," *M.A. Lombard & Son Co. v. Public Building Commission, supra* 428 N.E.2d at 892, on the part of the agency asserting the clause. No such wrongdoings were alleged in this case. We hold that the BCA's application of the "not contemplated by the parties" exception is an erroneous conclusion of law.

## II. *Unconscionability*

Although the circuit court did not address this issue, the Board did and we will do likewise.

The BCA found that:

We finally observe that, whether or not unforeseeable delay precludes enforcement of the no-damages-for-delay clause, it should be viewed as unconscionable to permit SHA, having for its own purposes imposed stoppages and required extra work extending the anticipated contract time fivefold, to rely on the no-damages-for-delay clause to deny reimbursement to Appellant.

The Board did not provide any further support for its unconscionability finding. Appellant argues that the contract, as it existed at the time the bargain was struck, was not unconscionable and that there is no evidence or allegation that appellee was coerced into signing or agreeing to it.

Appellee responds that courts may interfere with the terms of a contract where there is surprise. Appellee asserts that extending the duration of the contract from fifteen (15) months to more than six (6) years was a surprise. In addition, the subject contract was a State form contract with no room for negotiation. Finally, appellee contends that by finding enforcement of the contract unconscionable, the BCA was merely adopting two additional exceptions to the "no damages" clause: (1) delay unreasonable in duration, and (2) delay resulting from the active or direct interference by the contractee.

We hold that appellee's final point is untenable. If the BCA wished to adopt additional exceptions to the "no damages" clause it could simply say so.

"Historically, an agreement has been held to be unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " *Martin v. Farber*, 68 Md.App. 137, 144, 510 A.2d 608 (1986) quoting from *Hume v. United States*, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889); *see also Gladding v. Langrall, Muir & Nop-*

*pinger,* 285 Md. 210, 213, 401 A.2d 662 (1979). In *Martin,* we further held that:

Even though the doctrine of unconscionability permits the courts to exercise considerable leeway in avoiding inequitable results, that permissiveness is not without bounds.

"[W]hen determining whether an entire contract or any of its parts is so unconscionable as to justify its judicial rescission or cancellation, the matter will not be judged by hindsight but by the situation as it existed at the time the bargain was struck."

*Gladding v. Langrall, Muir & Noppinger,* 285 Md. 210, 213, 401 A.2d 662, 664 (1979).

Phrased differently, the fairness of an agreement is to be determined as of the time it was made, not on the basis of conditions occurring subsequently. *Gladding,* 285 Md. at 214, 401 A.2d at 665. Courts are not possessed of unbridled discretion to undo that which the parties fairly and voluntarily assumed, even if the agreement might be deemed imprudent.

68 Md.App. at 144, 510 A.2d 608.

In light of the foregoing, we hold that enforcement of the no-damages-for-delay clause is not unconscionable. As we have noted, *supra,* the clause serves an important policy function. Appellee was fully aware of the clause and the funding problems with which appellant had to work. Appellee had performed similar services on another portion of highway in the same area for the State. In addition, appellee had been fully compensated for the extra work performed on the contract. Exercising hindsight is not appropriate when determining whether to rescind a contract term for unconscionability. The Board erroneously concluded the clause should not be enforced.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.